IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **SINA MOGHTADER,** | Civil Action No.:5:18-cv-632 |
| *Plaintiff,* | |
| V. | JURY TRIAL |
| **THE GEO GROUP, INC.,** | |
| **DOCTOR GORDON,** *Individually.,* | |
| **DOCTOR MORGAN,** *Individually.,* | |
| **DOCTOR RODRIGUEZ,** *Individually.,* | |
| **MARK MCPHERSON,** *Individually.,* | |
| **GRIEVANCE INPECTOR J.I.E.,** *Individually,* | |
| **DETENTION OFFICER BLAKE,** *Individually., and* | |
| **DETENTION OFFICER RANDOLPH,** *Individually,* | |
| *Defendants.* | |

# PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

   **NOW COMES** Plaintiff SINA MOGHTADER complaining of The GEO Group, Inc., Doctor Gordon, Doctor Morgan, Doctor Rodriguez, Mark McPherson, GEO employee Blake, and GEO employee Randolph, and will show the Court the following:

## NUTSHELL

   1.   Sina Moghtader, a medical school student with no criminal record was held in a federal prison run by The GEO Group, Inc. ("GEO") for nearly one year before he was released with all charges dropped. Sina suffers from severe Post Traumatic Stress Disorder as a result of religious persecution he experienced as a child in Iran. During his time in the custody of GEO guards encouraged other inmates to beat Sina by referring to him falsely and loudly in front of other inmates as a terrorist, then ignored him when he was beaten under their supervision, and despite multiple requests for medical care, including prescribed medication, denied him access to the much-needed medical care. When he did make it to see

a GEO healthcare professional, the healthcare professional denied the obviously needed medical care. Guards were continually allowed to abuse Sina and allowed inmates to take his food, the latter of which resulted in Sina losing seventy-five pounds from lack of food. When Sina requested to see physicians, he was repeatedly told by the guards to take a plea deal on his pending criminal case if he wanted to see a doctor.

2. GEO ignored numerous written inmate medical care requests from Sina, and similar requests his criminal defense attorney Jerry Goldstein, and an outside physician, and continued to refuse to allow Sina to see a doctor or be prescribed any medication. GEO has been repetitively sued for ignoring inmate medical care requests. One of the beatings Sina received resulted in a severe ear infection that was allowed to go untreated until it did so much damage that Sina permanently lost his ability to hear out of his left ear. Sina suffered broken teeth, nerve damage, severe weight loss, a broken nose, and extreme indignities as a result of the treatment he received while under the care of GEO and its employees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C. § 1331; 42 U.S.C. § l2l3l-l2134, 12131(2), 12182); Section 504 of the Rehabilitation Act (29 U.S.C. §794) and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims.

4. Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in Bexar County, Texas, within the United States Southern District of Texas.

## PARTIES

5. Plaintiff Sina Moghtader is a resident of Bexar County, Texas.

6. Defendant GEO Group, Inc., is a private corporation operating in the U.S. Western District of Texas and can be served with process by serving Corporate Creations Network, Inc. at 2425 W. Loop South #200, Houston, TX 77027.

7. Defendant Randolph, ("Randolph") individually, at all time relevant was a GEO Group employee and who can be served with process at 218 S Laredo St # 2, San Antonio, TX 78207 or in person wherever he is found.

8. Defendant Blake, ("Blake") individually, at all time relevant was a GEO Group employee who can be served with process at 218 S Laredo St # 2, San Antonio, TX 78207 or in person wherever he is found.

9. Defendant Mark McPherson, ("McPherson") individually, at all time relevant was the Supervisor for Operations for the U.S. Marshal Service for the Western District of Texas who can be served with process at 655 E. Cesar Chavez Blvd. Rm. 235 San Antonio, Texas 78206 or in person wherever he is found.

10. Defendant Dr. Dempsey Gordon, ("Dr. Gordon") individually, at all time relevant was a GEO Group employee who can be served with process at 211 E Clarendon, Dallas, TX, 75203 or in person wherever he is found.

11. Defendant Dr. Morgan, ("Dr. Morgan") individually, at all time relevant was a GEO Group employee who can be served with process at 218 S Laredo St # 2, San Antonio, TX 78207 or in person wherever the doctor is found.

12. Defendant Dr. Rodriguez, ("Dr. Rodriguez") individually, at all time relevant was a GEO Group employee who can be served with process at 218 S Laredo St # 2, San Antonio, TX 78207 or in person wherever the doctor found.

13. Defendant Grievance Inspector J.I.E. ("UGI J.I.E.") individually, at all time relevant was a GEO Group employee who can be served with process at 218 S Laredo St # 2, San Antonio, TX 78207 or in person wherever the person is found.

## FACTS

14. Sina Moghtader is 35 years old and has never been convicted of a crime in his life.

15. When he was still a young child, Sina and his family fled Iran because of religious persecution and came to the United States to escape deepening violence. Prior to this, as a member of the Baha'i faith, Sina spent his childhood seeing and being the victim of widespread violence. In Iran, Baha'i members were subject to confiscation of property and denial of rights as well as arrest, imprisonment, torture, and execution. Members of the Baha'i faith lived in isolated areas to avoid persecution. Sina regularly saw members of the community being taken away by Iranian police. Some returned with electrocution marks and cigarette burns and bruises from whipping. An aunt of Sina's returned from her abduction pregnant from a rape. Some never returned to their homes. Sina and his family lived in constant fear.

16. As a result of these traumatic experiences, Sina was diagnosed with post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and learning disability (LD). The combination of these illnesses necessitated a combination of anxiety medication for the PTSD and medications to offset the ADHD. Thanks to psychiatric intervention, Sina excelled in school, earning a degree from the University of Texas at San Antonio and going on to medical school to follow his life-long dream of becoming a doctor like his father.

17. Unfortunately, in 2016, after completing his first two years of medical school, Sina's physician negligently prescribed a new medication that caused severe psychological side effects. Adderall, the new medication prescribed for the ADHD and LD, interacted dangerously with Sina's PTSD.  When he was later evaluated by Dr. Michael Arambula and Dr. Russell Thompson, the conclusion was that Sina experienced "a Stimulant / Adderall Induced Psychotic Disorder" and that "stimulant psychosis was a transitory psychiatric condition associated with a potent, high dose stimulant." In a letter to The Honorable Judge David Ezra who presided over Sina's dismissed federal criminal case, Dr. Arambula described the combination of medication as "analogous to adding kerosene to a flame." As a

result, Sina experienced a protracted psychotic episode and received federal charges due do psychotic episodes that were later dismissed.

18. Dr. Michael Arambula is an adjunct professor in the University of Texas Health Science Center at San Antonio Department of Psychiatry. Dr. Arambula is a member of the American and Texas Medical associations, American Psychiatric Association and the National Hispanic Medical Society, and also a member of the Federation of State Medical Boards, Texas Society of Psychiatric Physicians, Bexar County Medical Society, American Academy of Psychiatry and the Law, and the American Society of Law, Medicine and Ethics. Additionally, Dr. Arambula is a member and past president of the Bexar County Psychiatric Society, a board member of the University of Houston Law Center Health Law and Policy Institute Advisory Board, and a past board member of the Texas Board of Criminal Justice on Offenders with Medical and Mental Impairments.

19. While awaiting trial, Sina was placed in a federal prison run by GEO a private corporation in San Antonio, Texas.

20. GEO is a private corporation that operates and staffs prisons for the U.S. Marshals and other federal and state law enforcement branches. Employees of GEO act on behalf of the U.S. Marshal service to detain people accused of crimes in a federal prison in San Antonio, Texas. GEO is *"responsible for the safe and secure residential care of individuals in their corrections and detention facilities"* according to GEO's 2017 Annual Report.

21. Once interned at GEO's detention facility, several guards encouraged prisoners to abuse Sina, calling him names and accusing him of being a terrorist, presumably because of his Iranian descent. As a result, Sina was severely beaten by a group of prisoners under the supervision of GEO guards shortly after being admitted. Inmates broke his nose, held him down, and sodomized him with a toilet brush. Sina soon after developed an ear infection that increased in severity over time. Sina was then told that if he reported anything, he would be beaten again or killed. This terrified Sina into silence. Inmates also

began taking Sina's food from him under the threat of further violence, while under the supervision of GEO guards. Sina requested access to medical attention, but this was refused. Guards told him that he could only see a doctor if he pled guilty to the pending federal criminal charges so that he would then go another federal prison, but that he would not get to see a doctor at the GEO facility.

22.     On July 13, 2016 the San Antonio federal court in which Sina was charged ordered that Sina be assessed by Dr. Michael Arambula.

23.     On July 21, 2016 Dr. Arambula met with and assessed Sina. Dr. Arambula recommended that Sina begin anxiety medication. Sina, with Dr. Arambula's recommendation then requested the medication from Dr. Dempsey Gordon, the doctor at GEO's facility. *Sina was not given any medication.*

24.     On July 29, 2016 while suffering severe anxiety, Sina filed formal paperwork requesting that he be given access to the anxiety medication that Dr. Arambula prescribed. He also requested access to a doctor due to his untreated and worsening ear infection, now a month old. His complaint was returned with the box "Grievable time period has expired" checked by UGI J.I.E.[1] and no accompanying explanation. *See* **Exhibit 1.** *Sina was not given any medication.*

25.     On August 5, 2016 Dr. Arambula sent a letter directly to Dr. Gordon advising that Sina be given sertraline, a specific anxiety medication as he was suffering from severe anxiety. *Sina was not given any medication.*

26.     On August 6, 2016 Sina filed another formal request for medical attention. Officials responded to this grievance by writing "Records show you were seen by Psych Dr. Morgan who referred you to Dr. Rodriguez Psychiatrist who is the only one authorized to prescribe medication." *Sina was not given any medication.*

---

[1] "J.I.E." appears to be the initials of GEO grievance inspector at **Exhibit 1** who denied Sina's medical care request. UGI J.I.E. failed to sign the form as required and even their initials are difficult to read.

27. On August 15, 2016 Sina's criminal defense attorney, Jerry Goldstein, sent a letter to Dr. Gordon, again requesting that Sina be given appropriate medications, accompanied with a copy of Dr. Arambula's August 5, 2016 letter. By this time, Sina's ear infection had progressed to the point that Sina permanently lost hearing, and his ear was oozing blood. *Sina was not given any medication.*

28. On August 17, 2016 Sina filled out a request for health services form, again requesting medical attention. *Sina was not given any medical attention.*

29. On September 9, 2016 Sina's attorney directed a letter to Mark McPherson, Supervisor for Operations with the U.S. Marshals Western District of Texas, further requesting that Sina be given access to the appropriate medications. Sina was finally given access to medication. His ear infection began to heal, but Sina permanently lost hearing in his left ear as a result of the infection being allowed to go untreated for so many months.

30. Throughout this time, guards, including two guards on the seventh floor named Randolph and Blake, continued to encourage inmates to further abuse Sina, calling him names like "terrorist" and "the bomber". Sina was again beaten by inmates under guard supervision in October 2016. He suffered nerve damage and was struck so hard several teeth were broken. His food was routinely taken by inmates under GEO guard supervision. He was again told that if he said anything about it, he would be beaten again or killed.

31. In November 2016 Sina was beaten again. Inmates punched him in the face multiple times under the supervision of GEO guards, including Randolph and Blake.

32. When released from GEO's custody, Sina had lost 75 pounds, suffered nerve damage, had to have teeth repaired, required physical therapy, and permanently lost hearing in his left ear as a result of GEO's actions and inactions. He was further traumatized by GEO staff's refusal to provide him with adequate medication, even after being instructed to do so by multiple outside officials.

33. No GEO employees were ever disciplined or reprimanded for their treatment of Sina.

34. Gregorio De La Rosa, an honorably discharged former National Guardsman, was serving a six-month sentence for drug possession at a prison in Raymondville, Texas operated by GEO (then known as Wackenhut). A few days before his expected release in 2001, Gregorio was beaten to death by two other inmates using a lock tied to a sock, an incident that prompted officers and wardens to smirk and laugh, as well as allegations of a cover-up and destruction of evidence. After a Court of Appeals ruling, the case was settled for an undisclosed amount.

35. A woman committed suicide at GEO Group-Operated Val Verde County jail in Texas. Shortly before her death, the woman reported that she had been raped and assaulted by male inmates who were housed in the same cell block. She also reported being sexually humiliated by a GEO guard after reporting to the warden that guards allowed male and female inmates to have sex. The woman's family sued GEO and several of its guards. In March 2007, the company reportedly settled with the family for $200,000. Additionally, an investigation into sex abuse allegations at another GEO-run Texas prison led to the firing of a guard who was a convicted sex offender.

36. The State of Texas terminated GEO's (then known as Wackenhut) $12 million a year contract to run a jail in Travis County, Texas due to mismanagement that eventually led to eleven guards and one case manager being charged with sexually assaulting female inmates. Over a period of two years, the state levied $625,000 in penalties due to chronic staffing shortages at the facility. A state audit showed that the jail barely kept the minimum number of guards required in the contract.

37. Mark McPherson, Supervisor of Operations for the U.S. Marshals of the Western District of Texas was aware of prior problems of inmates not receiving medical care by GEO, however, took no steps to ensure Sina had medical acre until he was informed by lawyer Jerry Goldstein. No disciplinary action was given to any of the GEO employees acting under the supervision of the U.S. Marshal Service, thereby ratifying the behavior.

## CAUSES OF ACTION

## BIVENS ACTION, 42 U.S.C. §1983 FOURTH AMENDMENT VIOLATIONS

38. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

39. A Bivens cause of action is a judicially created counterpart to 42 U.S.C. § 1983 for claims against federal officers. Since federal officials do not ordinarily act under color of state law, constitutional violations by federal officials are generally beyond the reach of § 1983. Bivens established that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

40. The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*. Fourth Amendment violation are actionable under 42 U.S.C. Section 1983.

41. Defendant GEO Group acts with apparent authority of the U.S. Marshal Service as a private contractor providing the service of operating and staffing a prison for the U.S. Marshal Service. Mark McPherson is in charge of supervising GEO Group at the San Antonio location.

42. Defendant GEO Group and individual defendants violated Sina's Fourth Amendment and Fourteenth Amendments rights, at least, when they encouraged other prisoners to attack Sina, and displayed deliberate indifference to Sina's medical needs in denying him access, at least, to medical care for his wounds, severe ear infection, and need for anxiety medication.

43. Defendants had no objectively reasonable belief that encouraging prisoners to violence against Sina was lawful.

44. Sina's charges were dismissed and ended in his favor without any fine or other obligation.

45. Defendant GEO Group did not have adequate written policies, or train or supervise the guards or doctors properly such that they denied Sina access to appropriate medical care.

46. Defendant GEO Group ratified the behavior of the guards by failing to discipline guards for their actions despite Sina's written complaints and numerous communications from his doctor. The deliberately indifferent training and supervision was a direct and proximate cause of the deprivation of Sina's federally protected rights. As such, the execution of official policy caused the constitutional violations.

### 42 U.S.C. § 12131-12134, 12182: AMERICANS WITH DISABILITIES ACT

47. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

48. GEO violated Title II of the ADA (42 U.S.C. §l2l3l-l2134, 12131(2), 12182) and Section 504 of the Rehabilitation Act (29 U.S.C. §794).

49. Title II of the ADA applies to the County. Title II affirmatively requires that governmental agencies and recipients of federal funds modify and accommodate their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities.

50. The GEO Group has been, and is, a recipient of federal funds. Thus, GEO Group must comply with Section 504's mandate. Section 504 requires that federal money recipients reasonably accommodate persons with disabilities in their program activities and services and reasonably modify such services and programs to accomplish this purpose.

51. The GEO Group acts with the apparent authority of the U.S. Marshal Service and its prison qualifies as a program and service for purposes of Title II of the ADA and Section 504

52. The GEO Group violated Title H of the ADA and Section 504 by:

    a. Failing and refusing to reasonably modify and accommodate prison operations and services for Sina, which would include providing adequate care to people who have medical needs;

    b. Failing and refusing to adopt a policy to protect the well-being of people like Sina, persons with disabilities such as chronic anxiety;

   c. Discriminating against Sina, as a sufferer of chronic anxiety, in the provision of services by the County's sheriff department, on the basis of his disability, by not accommodating his needs related to his disability; and,

   d. Failing to conduct a self-evaluation plan under the ADA and Section 504, and then failing to modify its programs and services to accommodate the needs of persons with mental disabilities, such as Sina, when called upon to provide service.

53. Plaintiffs seek damages, as well as declaratory and injunctive relief, under the ADA and Section 504.

## NEGLIGENCE

54. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

55. The elements of a cause of action for negligence are the following: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused plaintiff's injury. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex.2009). In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

56. As GEO Group employees, defendants Detention Officer Blake, Detention Officer Randolph and UGI J.I.E. had a duty of ordinary care to not encourage or incite violence between inmates, as well as to report medical requests to on staff physicians. Defendant GEO Group had a duty to use ordinary care in supervising its employees. *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 453 (Tex.App.-Tyler 1996, no writ).

57. Defendants Blake and Randolph breached this duty by encouraging inmates to attack Sina, ignoring inmates attacking Sina while they were on duty, and by refusing him access to staff physicians

for treatment of illness and wounds. UGI J.I.E. refused Sina access to staff physicians for treatment of illness and wounds. UGI J.I.E.

58. The harm of being assaulted, beaten, and denied medical care would not have happened, but for the actions of defendants Blake and Randolph, as well as other employees of The GEO Group.

59. Encouraging other inmates to severely beat Sina and ignoring when this inevitably occurred meets the definition of gross negligence because the outcome was understood by the guards, who encouraged and allowed this to occur multiple times, despite having awareness of the dangers involved in inmate fights. Additionally, with UGI J.I.E., the refusal to allow Sina access to a physician despite multiple verbal and written requests involves the same conscious indifference to Sina's rights and safety.

60. Plaintiffs seek actual damages as well as pre and postjudgment interest and court costs from defendants Randolph and Blake, as well as The GEO Group under the doctrine of respondeat superior.

## GROSS NEGLIGENCE

61. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

62. In addition to the elements discussed above for negligence, gross negligence requires "an extreme degree of risk, considering the probability and magnitude of the potential harm to others [,] … of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11).

63. Encouraging other inmates to severely beat Sina and ignoring when this inevitably occurred meets the definition of gross negligence because the outcome was understood by the guards, who encouraged and allowed this to occur multiple times, despite having awareness of the dangers involved in inmate fights. Additionally, along with UGI J.I.E., the deliberate refusal to allow Sina access

to a physician despite multiple verbal and written requests involves the same conscious indifference to Sina's rights and safety.

64. Plaintiffs seek actual damages as well as pre and post-judgment interest and court costs from defendants Randolph, Blake, and UGI J.I.E. as well as The GEO Group under the doctrine of respondeat superior. Plaintiffs also seek exemplary damages for the harms the resulted from gross negligence. Tex. Civ. Prac. & Remedies Code § 41.003(a)(3).

## MEDICAL MALPRACTICE

65. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

66. Defendant The GEO Group, Inc., is responsible for the acts and/or the omissions of its agents, ostensible agents, servants, employees, and/or representatives, under the provision of borrowed servant, *respondeat superior*, ostensible agency, apparent agency, actual agency, and/or other agency principles stated in Texas law.

67. Defendant The GEO Group, Inc., through its agents and/or employees (Dr. Gordon, Dr. Morgan, and Dr. Rodriguez) in the course of rendering medical care and treatment to Sina, committed acts and/or omissions which constitute negligence as the term is defined by law, including, but not limited to, the following acts and/or omissions:

   a. Failing or refusing to give Sina anxiety medication as prescribed by Dr. Arambula;
   b. Failing or refusing to treat Sina's ear infection;
   c. Failing or refusing to treat Sina's injuries from multiple beatings sustained; and
   d. Any other acts and/or omissions.

68. Each and all of the foregoing acts and/or omissions of Defendant GEO employees and agents, singularly or in combination, were the proximate cause of injuries incurred by Sina.

## DUE PROCESS, EQUAL PROTECTION and RACIAL/ETHNIC DISCRIMINATION

69. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

70. The Supreme Court held in *Bolling v. Sharpe* (1954) that the Due Process Clause of the Fifth Amendment imposes various equal protection requirements on the federal government.

71. Sina was treated unlike similarly situated Caucasian, African-American and Latino inmates by GEO guards referring to him as a terrorist, allowing his food to be taken, allowing beatings, refusing to refer Sina to healthcare officials. Further, GEO healthcare employees refused to give Sina the medications he obviously required.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d at 445 (Tex. 2004).

73. Electing to ignore multiple written notices from Sina in the form of formal grievances as well as multiple letters from Sina's physician was an intentional act on the part of detention officers involved as well as medical staff. Encouraging inmates to attack Sina was reckless at the very least.

74. There is no justifiable reason for denying a sufferer of post-traumatic stress disorder access to medication, and this is as extreme and outrageous as maliciously denying a person with a disability any other needed accommodation. It is also extreme and outrageous to incite prisoners to violence against other prisoners.

75. As a result of this, Sina suffered months of unnecessarily severe symptoms from his existing post-traumatic stress disorder, in addition to living in perpetual fear of constant beatings and other indignities inflicted by inmates who had been encouraged by the guards to harm Sina.

76. The emotional distress Sina experienced was severe and constant throughout his entire stay at the GEO Group's prison. He carries emotional scars to this day

## PUNITIVE DAMAGES

77. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

78. All individuals sued are liable for punitive damages as they were consciously indifferent to the plaintiff's state and Constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

79. Plaintiffs also seek exemplary damages for the harms the resulted from gross negligence. Tex. Civ. Prac. & Remedies Code § 41.003(a)(3).

## ATTORNEY'S FEES

80. Sina Moghtader is entitled to recover attorneys' fees and costs to enforce his Constitutional rights and under 42 U.S.C. §12131-12134, 12131(2), 12182) and Section 504 of the Rehabilitation Act (29 U.S.C. §794).

## JURY TRIAL

81. Sina Moghtader demands trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

82. WHEREFORE, Plaintiff Sina Moghtader requests that the Court:

A. Enter judgment for Plaintiffs against The GEO Group and each and every individually named defendant jointly and severally;

B. Find that Plaintiffs are the prevailing parties in this case and award attorneys' fees and costs, pursuant to federal law, as noted against defendants The GEO Group and the individually named defendant employees and deputies jointly and severally;

C. Award damages to Plaintiffs for the violations of their Constitutional rights claim and state law claims;

D. Award Pre- and post-judgement interest;

E. Award Punitive damages against all individually named defendants;

F.	Order The GEO Group to implement and train employees in the importance of not inciting violence between inmates and not denying inmates access to needed medical care; and

G.	Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows himself entitled.

> Respectfully Submitted,
> KALLINEN LAW PLLC
>
> /S/ *Randall L. Kallinen*
>
> Randall L. Kallinen
> State Bar of Texas No. 00790995
> U.S. Southern District of Texas Bar No.: 19417
> 511 Broadway Street
> Houston, Texas 77012
> Telephone:	713.320.3785
> FAX:	713.893.6737
> E-mail:AttorneyKallinen@aol.com
> Attorney for Plaintiff