IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SINA MOGHTADER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 5:18-CV-632-XR |
| | § | |
| THE GEO GROUP, INC., | § | |
| DOCTOR GORDON, individually, | § | |
| DOCTOR MORGAN, individually, | § | |
| DOCTOR ROSARIO RODRIGUEZ, | § | |
| individually, MARK MCPHERSON, | § | |
| individually, GRIEVANCE INSPECTOR | § | |
| J.I.E, individually, | § | |
| DETENTION OFFICER BLAKE, | § | |
| individually, and | § | |
| DETENTION OFFICER RANDOLPH, | § | |
| individually, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**ORDER**

On this date, the Court considered Defendant Doctor Rosario Rodriguez's Motion to Dismiss. Docket no. 42. This case stems from the treatment Plaintiff Sina Moghtader received while confined in a federal prison operated and staffed by GEO Group. In her motion, Dr. Rodriguez, a psychiatrist who provided medical care at the prison, seeks dismissal of Plaintiff's claims against her based on alleged inadequate medical care. Rodriguez's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

For purposes of this motion, the Court accepts the facts pleaded by Plaintiff as true. Plaintiff alleges that he experienced religious persecution prior to fleeing Iran, and that he suffers from post-traumatic stress disorder, attention deficit hyperactivity disorder, and a learning

1

disability as a result of that persecution. *Id.* at 4. After completing his first two years of medical school, he experienced severe psychological side effects from a new medication that resulted in federal charges due to psychotic episodes. *Id.* at 5. Plaintiff was placed in a federal prison operated and staffed by GEO while he awaited trial. *Id.* Plaintiff alleges that GEO guards abused him by calling him a terrorist and encouraging other prisoners to beat him and take his food. *Id.* He alleges that a group of prisoners broke his nose, held him down, and sodomized him under the supervision of GEO guards. *Id.* Plaintiff later developed an ear infection, but he was allegedly told not to report it or anything else or he would be beaten again or killed. *Id.* When Plaintiff requested medical attention, the guards allegedly told him that he could only see a doctor if he pled guilty to his pending criminal charges so that he could be placed in a different federal prison. *Id.* at 6.

The judge assigned to Plaintiff's federal criminal case ordered that Plaintiff be assessed by Dr. Arambula, who recommended that Plaintiff begin to take anxiety medication after assessing him on July 21, 2016. *Id.* Plaintiff then requested the medication from Dr. Gordon, a doctor at the GEO facility, based on that recommendation. *Id.* By July 29, Plaintiff still had not received the medication, so he filed formal paperwork requesting the medication recommended by Dr. Arambula and access to a doctor for his ear infection. *Id.* This request was returned indicating that the grievable time period had expired. On August 5, Dr. Arambula sent a letter to Dr. Gordon at the prison advising that the doctor give Plaintiff the anxiety medication. *Id.* In response to Plaintiff's second formal request for medical attention filed on August 6, prison officials wrote to Plaintiff that their records showed that he had been seen by the prison psychologist, Dr. Morgan, who referred him to the prison psychiatrist, Dr. Rodriguez. *Id.* It further stated that Dr. Rodriguez was the only person authorized to prescribe medication. *Id.*

On August 15, Plaintiff's criminal defense attorney sent a letter to Dr. Gordon requesting that he give Plaintiff the anxiety medication. *Id.* at 7. On August 17, Plaintiff filled out a third formal request for medical attention. *Id.* Plaintiff received the medication only after his attorney wrote to the Supervisor for Operations with the U.S. Marshals of the Western District of Texas, Mark McPherson, requesting the medication. *Id.* Plaintiff allegedly suffered nerve damage, broken teeth, and permanent hearing loss in his left ear as a result of his time in the prison. *Id.* No GEO employees were disciplined or reprimanded in relation to Plaintiff's treatment by either GEO or the U.S. Marshal Service. *Id.*

Plaintiff filed his original complaint on June 24, 2018. Therein, Plaintiff alleges that "individual Defendants" engaged in certain behavior depriving him of his constitutional rights by encouraging other prisoners to attack Plaintiff and denying him access to medical care for his wounds, severe ear infection, and need for anxiety medication. *Id.* at 9. The only constitutional claims applicable to Rodriguez are (1) that she deprived Plaintiff of his Fourth and Fourteenth Amendment rights by displaying deliberate indifference to Plaintiff's medical needs by denying him access to medical care for his wounds, severe ear infection, and need for anxiety medication and (2) that Plaintiff's Fifth Amendment equal protection rights were violated because healthcare employees refused to give Plaintiff the medications he needed. *Id.* at 9, 14. Plaintiff also claims that Rodriguez was negligent in the course of rendering medical care and treatment to Plaintiff by failing or refusing to give Plaintiff anxiety medication as prescribed by Dr. Arambula, failing or refusing to treat Plaintiff's ear infection, and failing or refusing to treat Plaintiff's injuries from multiple beatings he sustained. *Id.* at 13. Plaintiff also asserts a claim for intentional infliction of emotional distress.

Defendant Rodriguez moves for dismissal of all claims on the basis of untimely service of process. Docket no. 42 at 6. On February 28, 2019, this Court extended the deadline for service upon Rodriguez through February 1, the date that Rodriguez was served. Text Order on Plaintiff's Motion to Substitute Service and to Extend Time for Service (docket no. 37) dated February 28, 2019.

Rodriguez moves for dismissal of the § 1983/*Bivens* constitutional claims on the basis of failure to state a claim upon which relief can be granted. Additionally, Defendant argues that Plaintiff's claims are governed by the Texas Medical Liability Act ("TMLA") and that Plaintiff cannot artfully plead his claim to avoid its procedural requirements. Docket no. 42 at 6. Defendant also argues that there are no factual allegations in the complaint that could indicate Rodriguez was deliberately indifferent to Plaintiff's medical needs. *Id.* at 7. Lastly, Defendant argues that Plaintiff's Fifth Amendment claim is not plausible as to Rodriguez because it is barred by the TMLA as a health care liability claim and the complaint lacks any factual allegation that Plaintiff was treated differently by Rodriguez on the basis of any protected characteristic. *Id.* at 8.

Defendant also moves for the dismissal of all state-law claims of medical malpractice and intentional infliction of emotional distress on the grounds that Plaintiff failed to plead facts that could constitute medical malpractice or intentional infliction of emotional distress. *Id.* at 7, 9. Plaintiff contends that he has adequately stated his claims, that private operators of prisons and their officers and employees may be sued under § 1983 and/or *Bivens*, and that he should be given leave to amend to state a claim if the Court finds that the current pleadings are inadequate.

## DISCUSSION

### I.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### II.    Plaintiff's Federal Constitutional Claims

Plaintiff brings claims under § 1983 and *Bivens* against Rodriguez for violating his constitutional rights by displaying deliberate indifference to Plaintiff's medical needs in denying him access to medical care for his wounds, severe ear infection, and need for anxiety medication. Docket no. 1 at 9. Plaintiff also alleges that his Fifth Amendment equal protection rights were violated because GEO healthcare employees refused to give Plaintiff medications he needed. *Id.* at 14. Defendant Rodriguez moves to dismiss Plaintiff's federal claims for depriving him of his Fourth, Fifth, and Fourteenth Amendment rights. Docket no. 42 at 9.

### A. Fifth Amendment Claim

Defendant moves to dismiss any Fifth Amendment claims against her on the grounds that Plaintiff fails to state a plausible claim for relief and that the claim is barred by the TMLA as a matter of law. Docket no. 42 at 8. Although inartfully pled, Plaintiff alleges that GEO health care employees refused to give him medications that he required, and that he was treated unlike similarly situated inmates of other races, in violation of the Fifth Amendment's prohibition against denying to any person the equal protection of the laws contained in the Due Process Clause. To establish this violation, Plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017). Plaintiff's general allegations to this effect are conclusory, as there is no allegation that Dr. Rodriguez knew his race and intentionally treated him differently than prisoners of different races in providing or denying access to medications, and he fails to specifically identify any similarly situated prisoner treated by Dr. Rodriguez who received more favorable treatment. Accordingly, the facts pled fail to plausibly state a claim for relief and the motion to dismiss this claim is granted.

### B. Fourth and Fourteenth Amendment Claims

To obtain relief under § 1983 or *Bivens*, a plaintiff first must claim the deprivation of a right secured by the Constitution or laws of the United States. *Grabowski v. Jackson Cty. Pub. Defs. Office*, 47 F.3d 1386, 1392 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 478 (5th Cir. 1996); *Ziglar v. Abbassi*, 137 S. Ct. 1843, 1854–55 (2017). Plaintiff's complaint alleges that he was deprived of his Fourth and Fourteenth Amendment rights when Rodriguez displayed deliberate indifference to his medical needs. Docket no. 1 at 9. Within the Fifth Circuit, courts generally

apply the deliberate indifference standard of the Due Process Clause to claims alleging the denial of medical care to pretrial detainees, rather than the Fourth Amendment. *Eriksen v. Ten Unknown Federal Agents*, No. EP-15-CV-216-DB-ATB, 2015 WL 13804250 (W.D. Tex. Oct. 16, 2015); *see also Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).[1]

For a prison official to violate a pretrial detainee's constitutional right to be secure in his basic human needs, the defendant must (1) have subjective knowledge of a substantial risk of serious harm and (2) respond to that risk with deliberate indifference. *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 464 (5th Cir. 2015) (citing *Hare*, 74 F.3d at 645). In other words, the prison official must both be aware of the facts allowing an inference that a substantial risk of serious harm exists and actually make that inference in order to act with deliberate indifference. *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998). "[T]he protections of the Due Process Clause . . . are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). "In a federal civil rights action, a plaintiff must allege the defendant was personally involved in the actions plaintiff complains of, or is responsible for the policy or custom giving rise to the constitutional deprivation." *Zambrano v. GEO Grp., Inc.*, No. CV SA-08-CA-607-FB, 2009 WL 10698770, at *2 (W.D. Tex. Jan. 14, 2009) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *McConney v. Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *Reimer v. Smith*, 663 F. 2d 1316, 1323 (5th Cir. 1981)).

Plaintiff makes conclusory allegations that the "individual defendants" were deliberately indifferent to Plaintiff's constitutional right to be secure in his basic human needs. Plaintiff

---

[1] The Court is evaluating the claim as pled by Plaintiff as a Fourteenth Amendment claim, but the Fifth Amendment applies to pretrial detainees in federal prisons while the Fourteenth Amendment applies to pretrial detainees in state prisons. *Compare Hare*, 74 F.3d at 639 *with Bell*, 441 U.S. at 523, 542.  However, the analysis is the same. *See id.* Whether a § 1983 or *Bivens* claim against individual employees of a private contractor is viable in this context is determined in the section discussing Plaintiff's motion for leave to amend.

mentions Rodriguez by name or otherwise specifically refers to her only once in the facts section of the complaint. It states that prison officials wrote to Plaintiff that their records showed that he had been seen by Dr. Morgan, who referred him to Dr. Rodriguez, in response to Plaintiff's second formal request for medical attention filed on August 6. Docket no. 1 at 6. The complaint lacks any factual matter that could plausibly state a right to relief against Rodriguez for constitutional violations.

Merely conclusory statements that there was deliberate indifference are insufficient to state a claim. Not only is there nothing in the complaint to suggest that Rodriguez had any knowledge of Plaintiff's alleged medical conditions, but there is also absolutely no factual matter to suggest that Rodriguez chose to proceed with either action or inaction despite that knowledge. Because a claim under § 1983 and a *Bivens* cause of action both require the defendant to have deprived the plaintiff of his constitutional rights with deliberate indifference, Defendant's motion to dismiss the § 1983 and *Bivens* claims against her is granted.

### C. Plaintiff's Request for Leave to Amend

In his opposition briefing, Plaintiff requests leave to amend his claims if the Court finds them insufficiently pled. Although leave to amend pleadings "shall be freely given when justice so requires," FED. R. CIV. P. 15(a)(2), leave to amend is not automatic. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). The decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Id.* In exercising its discretion, the Court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citing *Foman v. Davis*,

371 U.S. 178, 182 (1962)). Because the issue of whether § 1983 or *Bivens* claims are viable in this context has been raised, the Court considers whether leave to amend would be futile.

### i. § 1983 Claims

"To obtain relief under 42 U.S.C. § 1983, a prisoner must prove two elements: (1) a deprivation of a right secured by the Constitution and laws of the United States, and (2) a deprivation of that right by the defendant acting under color of state law." *Grabowski v. Jackson Cty. Pub. Defs. Office*, 47 F.3d 1386, 1392 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 478 (5th Cir. 1996). The employees of private federal prison operators are not state actors, and thus, not subject to suit under § 1983 as state actors. *Eltayib v. Cornell Cos. Inc.*, 533 F. App'x 414, 415 (5th Cir. 2013) (per curiam) (quoting *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)).

For a private actor to be subject to suit under § 1983, the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the state. *Holly v. Scott*, 434 F.3d 287, 292–93 (4th Cir. 2006) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). The Supreme Court has utilized several tests to determine whether a private actor's conduct can be fairly attributed to the State. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (utilizing the public function test to determine whether a private entity performs a function "exclusively reserved to the State"); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–71 (1970) (utilizing the state compulsion test to determine that a private actor's conduct is fairly attributable to the State when the State exerts coercive power over or significant encouragement to the private actor); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974) (utilizing the state action test to determine whether the State has put "itself into a position of interdependence" with the private actor such that the State is a "joint participant in the enterprise"). "[T]he

dispositive issue" in the state action inquiry "concerns the relationship among the State, the physician, and the prisoner." *West v. Atkins*, 487 U.S. 42, 56 (1988).

In Plaintiff's complaint, he describes the GEO-operated prison as a *federal* prison. Docket no. 1 at 5. As such, there is no plausible way to construe the operation of a federal prison as a function traditionally or exclusively reserved to the State, nor is there any indication of state action or state control of the facility. *Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) ("GEO and their employees are not subject to suit as state actors under § 1983 because they manage a federal prison, and § 1983 applies to constitutional violations by state—not federal—officials."). Further, there are no allegations that any state exerted coercive pressure or gave significant encouragement to Rodriguez. Lastly, the complaint lacks any allegation of a relationship between Rodriguez and Plaintiff and any State. Plaintiff has failed to state a plausible claim for relief under § 1983 because Rodriguez is an employee of or contractor with a private company operating a federal prison not acting under the color of State law. Thus, Plaintiff's § 1983 claims against Defendant Rodriguez are dismissed, and leave to amend to state a claim under § 1983 is denied.

### ii. *Bivens* Claims

A *Bivens* claim applies to constitutional violations by federal actors. *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993). It recognizes an implied cause of action to recover damages when a federal actor has violated an individual's constitutional rights. *Ziglar v. Abbassi*, 137 S.Ct. 1843, 1854–55 (2017) (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971)). *Bivens* actions are limited in that they require that a federal actor, officer, or agent deprive an individual of his constitutional rights in certain contexts. *See Bivens*, 403 U.S. at 397 (recognizing an implied damages remedy to compensate persons injured

by federal officers in violation of the Fourth Amendment's prohibition against unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (recognizing an implied remedy for gender discrimination by federal actors under the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing an implied remedy in cases where federal prison officials fail to provide medical care to a prisoner in violation of the Eighth Amendment).

Recent court decisions have consistently declined to extend liability under *Bivens* to any new contexts or categories of defendant. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). A *Bivens* claim is considered new if it is meaningfully different from other recognized *Bivens* cases. *Ziglar*, 137 S. Ct. at 1859. The Supreme Court recently declined to extend *Carlson v. Green*, which had permitted *Bivens* claims against federal prison officials for failing to provide medical care to a prisoner in violation of the Eighth Amendment, to an action against an employee of a privately-operated federal prison. *Minneci v. Pollard*, 565 U.S. 118, 124 (2012).

> [W]here . . . a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case.

*Id.* at 131. The main difference between a violation of the Eighth or Fourteenth Amendment as it applies here is that the Eighth Amendment grants protection for convicted prisoners while the Fourteenth Amendment and Fifth Amendment grant protection to state and federal pretrial detainees. *Hare*, 74 F.3d at 648.

Because this case involves a different constitutional amendment, *Pollard* does not expressly bar Plaintiff's claim and this is arguably a new context. *See Rroku v. Cole*, 726 F. App'x 201, 206 (5th Cir. 2018) ("The scenario here is slightly different than *Pollard*—Rroku's clam is under the Fifth, rather than the Eighth, Amendment. The Court has cautioned that

11

markedly similar claims brought under different amendments should not automatically be considered analogous. Thus, *Pollard* does not expressly bar Rroku's claim, arguably making this a new context.")(citation omitted). However, in *Rroku*, the Fifth Circuit declined to extend *Bivens* to claims by a pretrial detainee in a federal ICE facility run by GEO under the Fifth Amendment for neglect in medical care, noting that the availability of a state tort law claim can qualify as a convincing reason to refrain from creating a *Bivens* right and remedy. *Rroku*, 726 F. App'x at 206. In *Rroku* and in this case, the plaintiff had available state tort claims. *Rroku* counsels a similar result in this case.

Further, the Fifth Circuit has held in other unpublished opinions that employees of private corporations that operate federal prisons are not liable as federal actors under *Bivens* if the conduct is the type that typically falls within the scope of traditional tort law. *See Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam) ("GEO and its employees cannot be liable as private actors under *Bivens*."); *Eltayib*, 533 F. App'x at 415; *Oriakhi v. GEO Group, Inc.*, 579 F. App'x 292 (5th Cir. 2014). In fact, these cases involved employees of GEO Group-operated federal prisons. *Id.* Thus, the Court finds no basis for recognizing *Bivens* liability in this case. Plaintiff's claims against Rodriguez under *Bivens* are dismissed, and leave to amend to attempt to state a *Bivens* claim is denied.

### III.   Plaintiff's State-Law Claims

Plaintiff asserts state-law claims against the medical providers, which includes Dr. Rodriguez, asserting that the medical providers were negligent in the course of rendering medical care and treatment to Plaintiff by failing or refusing to give Plaintiff anxiety medication as prescribed by Dr. Arambula, failing or refusing to treat Plaintiff's ear infection, and failing or refusing to treat Plaintiff's injuries from multiple beatings he sustained. Docket no. 1 at 13.

Plaintiff also asserts a state-law claim for intentional infliction of emotional distress for the "intentional act" of "[e]lecting to ignore multiple written notices." *Id.* at 14.

### A. Intentional Infliction of Emotional Distress

"To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). Plaintiff claims that ignoring multiple written notices from Plaintiff in the form of formal grievances and multiple letters from Plaintiff's physician constitutes an intentional act for the purposes of this claim. Docket no. 1 at 14. There is no factual matter in the complaint to raise a right to relief beyond a speculative level because the only mention of Rodriguez in the complaint refers to Plaintiff receiving a document from prison staff stating that he had been referred to Rodriguez. Conclusory allegations that medical staff collectively elected to ignore written notices are insufficient to raise a plausible claim for relief against Rodriguez individually. The Court cannot reasonably infer from these facts that Rodriguez ever ignored Plaintiff's written complaints because there are no factual allegations that she ever even received the complaints, which would be necessary to ignore them. Plaintiff's claim for intentional infliction of emotional distress against Rodriguez is dismissed for the failure to state a plausible claim for relief.

The Court next considers whether Plaintiff should be given leave to amend to attempt to state a claim. "[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*,

157 S.W.3d 814, 816 (Tex. 2005). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffmann–LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Artful pleading does not alter the underlying nature of a health care liability claim. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010) (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005)). The elements of an HCLC under the TMLA are "(1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant." *Rendon v. Walgreens*, 144 F. Supp. 3d 894, 897–98 (N.D. Tex. 2015) (citing *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014)). Plaintiff's only remotely applicable intentional infliction of emotional distress claim to Rodriguez refers to an alleged lack of treatment or departure from accepted standards of medical care. Plaintiff's claims against Rodriguez concern medical care or the lack thereof, so the IIED claim is unavailable. Plaintiff's motion for leave to amend his intentional infliction of emotional distress claim is denied.

### B. Medical Malpractice

A plaintiff must prove four elements in a medical malpractice claim under Texas law: "(1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) injury or harm to the plaintiff; and (4) a causal connection between the breach of the applicable standard of care and the injury or harm." *Coronel v. Providence Imaging Consultants, P.A.*, 484 S.W.3d 635, 638 (Tex. App.—El Paso 2016, pet. denied). "[T]he duty to treat the patient with proper professional skill flows from the consensual relationship between

the physician and patient, and only when that relationship exists can there be a breach of a duty resulting in medical malpractice." *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995). While the fact that a physician does not deal directly with the patient does not necessarily preclude the existence of a relationship between physician and patient, the lack of a prior relationship requires the physician to have made some affirmative action to treat the patient to create a physician-patient relationship. *Estrada v. Mijares*, 407 S.W.3d 803, 807 (Tex. App.—El Paso 2013, no pet.).

There is no factual allegation that Rodriguez was made aware of Plaintiff's condition at any time during his confinement. The alleged response from prison officials stating that Plaintiff had been referred to Rodriguez does not give rise to any reasonable inference that Rodriguez made an affirmative action to treat Plaintiff. Because the alleged facts do not allow an inference of a physician-patient relationship as is required under Texas law to create a duty of care, there is no plausible claim of medical malpractice against Rodriguez. Defendant Rodriguez's motion to dismiss Plaintiff's medical malpractice claim is granted.

The Court thus considers whether leave to amend is warranted. At the hearing, it was discussed that Dr. Rodriguez did treat Plaintiff on at least two occasions. Plaintiff has requested the applicable medical records and seeks leave to amend if, after his expert reviews the records, he feels a medical malpractice claim can be plausibly stated. Plaintiff's motion for leave to amend the medical malpractice claim against Rodriguez is granted. The amended complaint must be filed within thirty days from the filing of this order.

## CONCLUSION

Defendant's motion to dismiss claims against Dr. Rodriguez (docket no. 42) is GRANTED. Plaintiff's request for leave to amend is GRANTED in part and DENIED in part.

At the hearing, the Court generally gave Plaintiff leave to file an amended complaint as to all Defendants after having conducted some discovery and having determined whether to proceed against Edith Doty and whether to attempt to assert claims under § 1983 or *Bivens*. This Order pertains only to the claims against Dr. Rodriguez and grants leave to file an amended complaint as to the medical malpractice claim against Dr. Rodriguez within thirty days. However, to avoid multiple amendments and to keep this case moving along, Plaintiff's amended complaint should also incorporate amended pleadings as to all Defendants as discussed at the status conference, or Plaintiff should demonstrate to the Court why additional time is required to amend pleadings.

It is so ORDERED.

SIGNED this 20th day of June, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE