IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **SINA MOGHTADER,** | )( | Civil Action No.:5:18-cv-632 |
| | )( | (Jury Trial) |
| *Plaintiff,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **THE GEO GROUP, INC.,** *et al.,* | )( | |
| | )( | |
| *Defendants.* | )( | |

**PLAINTIFF'S RESPONSE TO DEFENDANT RODRIGUEZ'S MOTION TO DISMISS**

**TO THE HONORABLE XAVIER RODRIGUEZ,**

**NOW COMES SINA MOGHTADER** and responds to defendant Rodriguez's motion to dismiss and will show the Court the following:

### PROCEDURE

This lawsuit was filed June 24, 2018.

GEO Group answered July 23, 2018.

February 28, 2019 the Court granted the Plaintiff's motion to allow late service upon Dr. Rodriguez.

Dr. Rodriguez filed a motion to dismiss February 22, 2019.

Plaintiff amended his complaint August 12, 2019.

Dr. Rodriguez filed a second motion to dismiss September 4, 2019.

### OBJECTION TO DEFENDANTS' EXHIBITS AND "FACTS"

The plaintiff is the master of his complaint and, of course, does not agree to any of defendants' recitation of plaintiff's facts contained in its motion to dismiss unless those facts agree 100% with Plaintiff's complaint facts set forth in Exhibit 1 (the live complaint with exhibits) and

given all reasonable inferences and in a light most favorable to plaintiff.

A Rule 12 motion may address only those facts alleged in a complaint with one exception. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The Fifth Circuit approves a district court's consideration of documents attached to a defendant's motion to dismiss that are (1) referred to in the plaintiff's complaint *and* (2) central to the plaintiff's claim. *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498-99). Rule 12 prohibits the inclusion of facts by a defendant unless they are "attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000)).

The motion to dismiss must be decided wholly on plaintiff's complaint allegations. FRCP 12(d). In considering facts, this Court may base its decision on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir.2004).

If jailers, jail clinic staff and counties could merely recite their rendition of the events in a motion to dismiss and then it be accepted as gospel there would be no civil rights cases.

## ISSUE PRESENTED

WHETHER PLAINTIFF HAS STATED A PLAUSIBLE CAUSE OF ACTION AGAINST DEFENDANT RODRIGUEZ.

## FACTS ALLEGED

Plaintiff attaches the live complaint including the exhibits (**Exhibit 1**) containing the facts upon which plaintiff relies in making his response. Plaintiff relies on the all facts asserted therein

(even if not repeated in the body of this instant response to the pending motions to dismiss), as well as all reasonable inferences in a light most favorable to plaintiff.

In the body of the live complaint plaintiff alleges:

*1.     Sina Moghtader, a medical school student with no criminal record was held in a federal prison run by The GEO Group, Inc. ("GEO") for nearly one year before he was released with all charges dropped. Sina suffers from severe Post Traumatic Stress Disorder as a result of religious persecution he experienced as a child in Iran. During his time in the custody of GEO guards encouraged other inmates to beat Sina by referring to him falsely and loudly in front of other inmates as a terrorist, then ignored him when he was beaten under their supervision, and despite multiple requests for medical care, including prescribed medication, denied him access to the much-needed medical care. When he did make it to see a GEO healthcare professional, the healthcare professional denied the obviously needed medical care. Guards were continually allowed to abuse Sina and allowed inmates to take his food, the latter of which resulted in Sina losing seventy-five pounds from lack of food. When Sina requested to see physicians, he was repeatedly told by the guards to take a plea deal on his pending criminal case if he wanted to see a doctor.*
*2.     GEO ignored numerous written inmate medical care requests from Sina, and similar requests his criminal defense attorney Jerry Goldstein, and an outside physician, and continued to refuse to allow Sina to see a doctor or be prescribed any medication. GEO has been repetitively sued for ignoring inmate medical care requests. One of the beatings Sina received resulted in a severe ear infection that was allowed to go untreated until it did so much damage that Sina permanently lost his ability to hear out of his left ear. Sina suffered broken teeth, nerve damage, severe weight loss, a broken nose, and extreme indignities as a result of the treatment he received while under the care of GEO and its employees.*
*…*

*14.     <u>Sina Moghtader is 35 years old and has never been convicted of a crime in his life.</u>*
*15.     When he was still a young child, Sina and his family fled Iran because of religious persecution and came to the United States to escape deepening violence. Prior to this, as a member of the Baha'i faith, Sina spent his childhood seeing and being the victim of widespread violence. In Iran, Baha'I members were subject to confiscation of property and denial of rights as well as arrest, imprisonment, torture, and execution. Members of the Baha'i faith lived in isolated areas to avoid persecution. Sina regularly saw members of the community being taken away by Iranian police. Some returned with electrocution marks and cigarette burns and bruises from whipping. An aunt of Sina's returned from her abduction pregnant from a rape. Some never returned to their homes. Sina and his family lived in constant fear.*

16.     *As a result of these traumatic experiences, Sina was diagnosed around 2011 with posttraumatic stress disorder (PTSD) and diagnosed in 1989-1990 attention deficit hyperactivity disorder (ADHD) and learning disability (LD). The combination of these illnesses necessitated a combination of anxiety medication for the PTSD and medications to offset the ADHD.* Thanks to psychiatric intervention, Sina excelled in school, earning a degree from the University of Texas at San Antonio and going on to medical school to follow his life-long dream of becoming a doctor like his father.

17.     Unfortunately, in 2016, after completing his first two years of medical school, Sina's physician negligently prescribed a new medication that caused severe psychological side effects. Adderall, the new medication prescribed for the ADHD and LD, interacted dangerously with Sina's PTSD. When he was later evaluated by Dr. Michael Arambula and Dr. Russell Thompson, the conclusion was that *Sina experienced "a Stimulant/Adderall Induced Psychotic Disorder"* and that "stimulant psychosis was a transitory psychiatric condition associated with a potent, high dose stimulant." In a letter to The Honorable Judge David Ezra who presided over Sina's dismissed federal criminal case, Dr. Arambula described the combination of medication as "analogous to adding kerosene to a flame." *As a result, Sina experienced a protracted psychotic episode and received federal charges due do psychotic episodes that were later dismissed.*

18.     Dr. Michael Arambula is an adjunct professor in the University of Texas Health Science Center at San Antonio Department of Psychiatry. Dr. Arambula is a member of the American and Texas Medical Associations, American Psychiatric Association and the National Hispanic Medical Society, and also a member of the Federation of State Medical Boards, Texas Society of Psychiatric Physicians, Bexar County Medical Society, American Academy of Psychiatry and the Law, and the American Society of Law, Medicine and Ethics. Additionally, Dr. Arambula is a member and past president of the Bexar County Psychiatric Society, a board member of the University of Houston Law Center Health Law and Policy Institute Advisory Board, and a past board member of the Texas Board of Criminal Justice on Offenders with Medical and Mental Impairments.

19.     While awaiting trial, Sina was placed in a federal prison run by GEO a private corporation in San Antonio, Texas.

20.     GEO is a private corporation that operates and staffs prisons for the U.S. Marshals and other federal and state law enforcement branches. Employees of GEO act on behalf of the U.S. Marshal Service to detain people accused of crimes in a federal prison in San Antonio, Texas. GEO is "responsible for the safe and secure residential care of individuals in their corrections and detention facilities" according to GEO's 2017 Annual Report.

21.     *Once interned at GEO's detention facility, several guards encouraged prisoners to abuse Sina, calling him names and accusing him of being a terrorist, presumably because of his Iranian descent. As a result, Sina was severely beaten by a group of prisoners under the supervision of GEO guards shortly after being admitted. Inmates broke his nose, held him down, and sodomized him with a toilet brush. Sina soon after developed an ear infection that increased in severity over time. Sina was then told that if he reported anything, he would be beaten again or*

*killed. This terrified Sina into silence. Inmates also began taking Sina's food from him under the threat of further violence, while under the supervision of GEO guards. Sina requested access to medical attention, but this was refused. Guards told him that he could only see a doctor if he pled guilty to the pending federal criminal charges so that he would then go another federal prison, but that he would not get to see a doctor at the GEO facility.*

22. *On July 13, 2016 the San Antonio federal court in which Sina was charged ordered that Sina be assessed by Dr. Michael Arambula.*

23. *On July 21, 2016 Dr. Arambula met with and assessed Sina. Dr. Arambula recommended that Sina begin anxiety medication*. Sina, with Dr. Arambula's recommendation then requested the medication from Dr. Dempsey Gordon, the doctor at GEO's facility. Sina was not given any medication.

24. On July 29, 2016 while suffering severe anxiety and an ear infection, Sina filed formal paperwork requesting that he be given access to the anxiety medication that Dr. Arambula prescribed and to be treated for the ear infection. He also requested access to a doctor due to his untreated and worsening ear infection, now a month old. His complaint was returned with the box "Grievable time period has expired" checked by GEO employee Unit Grievance Inspector Edith Doty and no accompanying explanation. Sina was not given any medication. At deposition Edith Doty testified she had no medical training and GEO Group allowed her to pass judgment on medical issues such as ear infections and anxiety.

25. On August 5, 2016 Dr. Arambula sent a letter directly to Dr. Gordon advising that Sina be given sertraline, a specific anxiety medication as he was suffering from severe anxiety. Sina was not given any medication. Sina informed Dr. Gordon of his asthma but did not get an inhaler prescription. As a result Sina suffered several debilitating asthma attacks. Sina informed Dr. Gordon of an ear infection in the end of June 2016 .

26. *On August 6, 2016 Sina filed another formal request for medical attention. Officials responded to this grievance by writing "Records show you were seen by Psych Dr. Morgan who referred you to Dr. Rodriguez Psychiatrist who is the only one authorized to prescribe medication." Sina was not given any medication. Sina saw Dr. Rodriguez via video conferencing with Dr. Morgan present at the end of August 2016. Dr. Rodriguez prescribed Zoloft for Sina but did not receive it. At this time Sina also told Dr. Rodriguez in the presence of Dr. Morgan that Sina's food was being taken and that he was being beaten by inmates because of Blake and Randall encouraging prisoners to mistreat Sina by referring to him as a terrorist and indicating inmates would not be disciplined for mistreatment. Neither Dr. Morgan nor Dr. Rodriguez reported these concerns to the appropriate GEO personnel*.

27. On August 15, 2016 Sina's criminal defense attorney, Jerry Goldstein, sent a letter to Dr. Gordon, again requesting that Sina be given appropriate medications, accompanied with a copy of Dr. Arambula's August 5, 2016 letter. By this time, Sina's ear infection had progressed to the point that Sina permanently lost hearing, and his ear was oozing blood. Sina was not given any medication.

28.     On August 17, 2016 Sina filled out a request for health services form, again requesting medical attention. Sina was not given any medical attention.
29.     On September 9, 2016 Sina's attorney directed a letter to Mark McPherson, Supervisor for Operations with the U.S. Marshals Western District of Texas, further requesting that Sina be given access to the appropriate medications. Sina was finally given access to medication. His ear infection began to heal, but Sina permanently lost hearing in his left ear as a result of the infection being allowed to go untreated for so many months.
30.     Throughout this time, guards, including two guards on the seventh floor named Captain Randall and Darius Blake, continued to encourage inmates to further abuse Sina, calling him names like "terrorist" and "the bomber". Sina was again beaten by inmates under guard supervision in October 2016. He suffered nerve damage and was struck so hard several teeth were broken. His food was routinely taken by inmates under GEO guard supervision. He was again told that if he said anything about it, he would be beaten again or killed.
31.     In November 2016 Sina was beaten again. Inmates punched him in the face multiple times under the supervision of GEO guards, including Captain Randall and Darius Blake. Sina was shipped to a Fort Worth U.S. detention center in December 2016 and in February 2017 came back to GEO Group. When Sina came back GEO Group failed to give Sina his Zoloft for two weeks at the end of February 2017 causing great anxiety. Sina informed Captain Randall of the need of Zoloft, however, Captain Randall did not see to it that Sina got his medication.
32.     When released from GEO's custody, Sina had lost 75 pounds, suffered nerve damage, had to have teeth repaired, required physical therapy, and permanently lost hearing in his left ear as a result of GEO's actions and inactions. He was further traumatized by GEO staff's refusal to provide him with adequate medication, even after being instructed to do so by multiple outside officials.
33.     No GEO employees were ever disciplined or reprimanded for their treatment of Sina.
…
37.     Mark McPherson, Supervisor of Operations for the U.S. Marshals of the Western District of Texas was aware of prior problems of inmates not receiving medical care by GEO, however, took no steps to ensure Sina had medical acre until he was informed by lawyer Jerry Goldstein. No disciplinary action was given to any of the GEO employees acting under the supervision of the U.S. Marshal Service, thereby ratifying the behavior.
…
62.
…
Dr. Rodriquez
1) There was no psychiatric screening of Mr. Moghtader upon admission by Dr. Rodriguez which would have quickly revealed treatable psychiatric problems (APHA V.3a(1), p. 46). Dr. Rodriguez viewed Mr. Moghtader and was aware of his name.

*2) Mr. Moghtader did not consent to a distance-based medicine consultation and a in-person interview may have revealed Mr. Moghtader's serious psychiatric condition. (APHA, Vi.H.2a, p. 95).*
*3) Rodriguez failed to notify the detention facility staff of client's claims of assault (Moghtader deposition p. 268, Ins. 11-14) or theft of food by inmates resulting in significant weight loss (p. 190, Ins. 15-19).*

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986).

The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This strict standard of review under Rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Shipp v. McMahon*, 234 F.3d 907, 911 (5th Cir. 2000). When reviewing a motion to dismiss, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284-85 (5th Cir. 1993); *Lindquist v. City of Pasadena, Texas,* 525 F.3d 383, 386 (5th Cir. 2008).

Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 644 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)", and the Court should deny a motion to dismiss

even if it appears *"that a recovery is very remote and unlikely"*. *Id.* at 1965 (internal citation and footnote omitted), following *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Supreme Court unanimously, expressly, and repeatedly has rejected a "heightened pleading standard" for 42 U.S.C. § 1983 cases against municipal governments. A recent case reversing dismissal (which also challenged medical care in prison), the Supreme Court reaffirmed, "[s]pecific facts are not (per curiam), quoting *Bell Atlantic*, 127 S.Ct. at 1964 (additional citations omitted). [T]he [Complaint] need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89 (2007).

By seeking dismissal because of an alleged lack of details than those already in the original complaint, the defendants' motion to dismiss requests this Court to impose a heightened pleading requirement that, in the same context of a 42 U.S.C. § 1983 claim against a municipality, the Supreme Court has unanimously rejected. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993).

In that case, the Fifth Circuit had found that plaintiff "fail[ed] "to state any facts with respect to the adequacy (or inadequacy) of the police training." 954 F.2d 1054, 1058 (5th Cir. 1992)(emphasis added). The Supreme Court rejected that approach. *Leatherman,* 507 U.S. at 167-68. Justice Rehnquist explained that, in § 1983 constitutional cases, nothing requires plaintiffs to "set out in detail the facts upon which he bases his claim", and that to impose such a requirement would be "impossible to square … with the liberal system of 'notice pleading' set up by the federal rules". Id. at 168 (citation and internal quotation omitted). "In the absence of … amendment [to the federal rules], federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Id. at 168-69. The Supreme Court reaffirmed *Leatherman's* holding in *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 513 (2002) (because Federal "Rule 9(b) makes no mention of municipal liability under Rev. Stat. §1979, 42

U.S.C. § 1983"); accord, e.g., *Bell Atlantic,* 127 S.Ct. at 1973 n.14. In *Bell Atlantic,* the Court expressly reconfirmed "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974; see also supra Part III, quoting *Erickson,* 127 S.Ct. at 2200 ("[s]pecific facts are not necessary", only "fair notice").

## **NEGLIGENCE/MALPRACTICE**

The elements of medical negligence are outlined in the Medical Liability Act (MLA) and are as follows:

a. The defendant is a physician or health-care provider

b. The plaintiff's cause of action is a health-care-liability claim

c. The defendant owed the plaintiff a duty of care

d. The defendant breached that duty – that is, the defendant did not meet the required standard of care, and

e. The defendant's breach proximately caused the plaintiff's injury

Defendant Dr. Rodriguez is a physician, licensed by the State of Texas, and was involved in providing care for Sina and other detainees at the GEO facility. Tex. Civ. Prac. & Rem. Code §74.001(a)(23)(A).

Medical care is any act defined as practicing medicine under Texas Occupations Code §151.002 that was performed or furnished, or that should have been performed or furnished, by a person licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement. Tex. Civ. Prac. & Rem. Code §74.001(a)(190). A cause of action falls within the scope of the MLA if it is based on a physician or health-care provider's treatment or lack of treatment. Tex. Civ. Prac. & Rem. Code §74.001(a)(13). Defendant Rodriguez

acknowledges in the motion to dismiss that she provided medical care to Sina.

Generally, a physician or health-care provider's duty of care originates solely through the relationship with the patient and is owed only to the patient. *Van Horn v. Chambers*, 970 S.W.2d 542, 545 (Tex.1998). The general duty of a physician or health-care provider is to act as a reasonably prudent physician or health-care provider would act under the same or similar circumstances. *Jackson v. Axelrad*, 221 S.W.3d 650, 655 (Tex.2007). This is the duty of care that was owed to Sina, who was defendant's patient.

There was no psychiatric screening of Mr. Moghtader upon admission by Dr. Rodriguez which would have quickly revealed treatable psychiatric problems (APHA V.3a(1), p. 46). Dr. Rodriguez viewed Mr. Moghtader and was aware of his name.

A physician can be liable for not obtaining the patient's informed consent before beginning medical treatment. Tex. Civ. Prac. & Rem. Code §74.101. Mr. Moghtader did not consent to a distance-based medicine consultation and a in-person inter-view may have revealed Mr. Moghtader's serious psychiatric condition. (APHA, Vi.H.2a, p. 95).

A physician who does not monitor a patient for a known condition can be liable for injuries resulting from that condition. *Chambers v.* Conway, 883 S.W.2d at 158. Rodriguez failed to notify the detention facility staff of client's claims of assault (Moghtader deposition p. 268, Ins. 11-14) or theft of food by inmates resulting in significant weight loss (p. 190, Ins. 15-19).

It is clear that plaintiff's live complaint has stated a cause of action for medical malpractice, negligence and gross negligence which caused Sina great pain and suffering.

## CONCLUSION AND PRAYER

Defendant Rodriguez was negligent and grossly negligent in providing medical care. Defendant's motion to dismiss should be DENIED and plaintiff requests all other relief in law and

equity to which he shows himself entitled.

>Respectfully Submitted,
>
>/s/ Randall L. Kallinen
>Kallinen Law PLLC
>State Bar of Texas No. 00790995
>Southern District of Texas Bar No.: 19417
>511 Broadway Street
>Houston, Texas 77012
>Telephone:    713.320.3785
>FAX:          713.893.6737
>Email:        AttorneyKallinen@aol.com
>Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that I have served a true and correct copy of the foregoing upon all counsel of record on this 30th day of September 2019 by filling with the ECF System of the Court.

>/s/ Randall L. Kallinen
>Randall L. Kallinen