IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SINA MOGHTADER, | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 5:18-CV-632-XR |
| | § | |
| THE GEO GROUP, INC., *et al.*, | § | |
|     *Defendants.* | § | |

**DEFENDANT DEMPSEY D. GORDON, JR., DO'S
MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)**

Defendant Dempsey D. Gordon, Jr., DO files this Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) and would respectfully show this Court as follows:

## I.    STATEMENT OF THE CASE

Plaintiff filed the above named and numbered lawsuit on June 24, 2018. Dr. Gordon was served with the lawsuit on July 6, 2018. Dr. Gordon, appearing *pro se*, filed his Original Answer on July 19, 2018. Dr. Gordon subsequently sought and retained counsel. Pursuant to Federal Rule of Civil Procedure 15(a)(1), Dr. Gordon filed his First Amended Answer to Plaintiff's Original Complaint on August 9, 2018.

This Court instructed Plaintiff to file an amended complaint after limited discovery. The parties engaged in limited discovery as directed by this Court, including the deposition of Plaintiff. Plaintiff filed his First Amended Original Complaint on August 12, 2019 and attached the transcript of his deposition to the Amended Complaint. In his Amended Complaint, Plaintiff brought three causes of action against Dr. Gordon:

1. A *Bivens* cause of action for violations of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution;

2. Violations of Plaintiff's due process and equal protection rights; and

3. Medical malpractice.

Dr. Gordon filed his Answer to Plaintiff's First Amended Original Complaint on August 26, 2019. Dr. Gordon specifically denied all allegations against him. Dr. Gordon asserted that Plaintiff could not bring an action for damages against him pursuant to *Bivens*, as he is an individual employed by a private entity and the actions or omissions complained of are of a kind that typically falls within the scope of traditional state tort law. Dr. Gordon further asserted that Plaintiff had failed to state a claim on which relief could be granted.

## II. STANDARD OF REVIEW FOR RULE 12(c) MOTION

Under Rule 12(c) of the Federal Rules of Civil Procedure, after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. FED. R. CIV. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd., et al.*, 914 F.2d 74, 76 (5th Cir.1990)(per curiam)(citation omitted); *See also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998).

The standard to be applied when analyzing a Rule 12(c) motion is identical to the standard used for a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *See In re Great Lakes Dredge & Cock Co. LLC*, 624 F.3d 201, 209 (5th Cir.

2010); *Guidry v. American Public Life Insurance Co.*, 512 F.3d 177, 180 (5th Cir.2007); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999).

In construing a motion pursuant to Rule 12(c), the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d at 324; *see Guidry v. American Public Life Insurance Co.*, 512 F.3d at 180. "The plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is plausible if the factual allegations show that the plaintiff is entitled to relief on a more than speculative basis. *In re Great Lakes Dredge & Cock Co. LLC*, 624 F.3d at 210; *Twombly*, 550 U.S. at 555.

In a 12(c) motion, the Court should not look beyond the pleadings, "any documents attached to the pleadings, and any documents attached to the motion that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2002). A plaintiff cannot rely on conclusory statements, unwarranted factual inferences, or legal conclusions to defeat a 12(c) motion. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir.2010). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (*quoting* 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE §1216, at 156-159 (2d ed. 1990)).

### III. ARGUMENT AND AUTHORITIES

**A. Plaintiff's Causes of Action Under Federal Law**

**1. Plaintiff has failed to properly state any *Bivens* actions against Dr. Gordon.**

In 1871, Congress provided a remedy for someone whose constitutional rights were violated by state officials. *See* 42 U.S.C. § 1983. In *Bivens*, the Supreme Court, basing their finding at least partially on § 1983, recognized an implied damages action to compensate persons injured by federal officers who violated their constitutional rights. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1999).

To state a claim under *Bivens*, a plaintiff "must allege (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *See Eriksen v. Ten Unknown Named Federal Agents*, No. EP-15-CV-216-DB-ATB, 2015 WL 13804250, at *3 (W.D. Tex. Oct. 16, 2015) (citing *Bazemore v. Bragg*, EP-10-CV-211-DB-RFC, 2011 WL 3471240, at *4 (W.D. Tex. July 18, 2011)), *report and recommendation adopted*, EP-15-CV-216-DB, 2015 WL 13804248, at *1 (W.D. Tex. Nov. 17, 2015).

"Within the Fifth Circuit, courts generally apply the deliberate indifference standard, through the Due Process Clause, rather than the Fourth Amendment, to claims alleging the denial of medical care to arrestees or pretrial detainees." *Id.* at *5; *see also Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472-73 (5th Cir. 1996); *Briggs v. Edwards*, Civ. A. Nos. 12-2145, 13-5335, 13-5342, 2013 WL 5960676, at *6 n.10 (E.D. La. Nov. 6, 2013); *Delmast v. Cardenas*, Civ. A. No. 4:09cv629, 2011 WL 4591938, at *11 (E.D. Tex. Sept. 1, 2011). Claims brought by arrestees and pretrial detainees under the Fourth Amendment for denial of medical care against federal actors should be considered under the deliberate indifference standard applied through the Due

4

Process Clause of the Fifth Amendment. *See Eriksen*, No. EP-15-CV-216-DB-ATB, 2015 WL 13804250, at *5; *Ogbolu v. U.S. Immigration & Customs Enforcement*, Civ. A. No. H-06-0115, 2006 WL 3152694, at *5 (S.D. Tex. Nov. 1, 2006). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). Deliberate indifference amounts to "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must establish two elements to prove deliberate indifference: (1) the plaintiff was deprived of a medical need that is sufficiently and objectively serious and (2) that the defendant had a culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he protections of the Due Process Clause… are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). "In a federal civil rights action, a plaintiff must allege the defendant was personally involved in the actions plaintiff complains of, or is responsible for the policy or custom giving rise to the constitutional deprivation." *Zambrano v. GEO Grp., Inc.*, No. CV SA-08-CA-607-FB, 2009 WL 10698770, at *2 (W.D. Tex. Jan. 14, 2009) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *McConney v. Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981)).

It is unclear what, if any, *Bivens* action is asserted by Plaintiff against Dr. Gordon. In his Amended Complaint, Plaintiff states, "Defendant GEO Group and individual defendants violated Sina's Fourth and Fourteenth Amendments rights, at least, when they encouraged other prisoners to attack Sina, and displayed deliberate indifference to Sina's medical needs in denying him access, at least, to medical care for his wounds, severe ear infection, and need for anxiety medication under the 5th Amendment." *See* Plaintiff's First Amended Original Complaint, Doc. # 57, para. 42. Although Plaintiff seems to group in all "individual defendants" here, he did not allege any facts

that suggest that Dr. Gordon took part in any encouragement of other prisoners to attack Sina.[1] The following paragraphs are the only paragraphs in the "Facts" section of Plaintiff's Amended Complaint that pertain to Dr. Gordon:

> On July 21, 2016 Dr. Arambula met with and assessed Sina. Dr. Arambula recommended that Sina begin anxiety medication. Sina, with Dr. Arambula's recommendation then requested the medication from Dr. Dempsey Gordon, the doctor at GEO's facility. *Sina was not given any medication.*
> *See* Plaintiff's First Amended Original Complaint, Doc. # 57, para. 23.
>
> On August 5, 2016 Dr. Arambula sent a letter directly to Dr. Gordon advising that Sina be given sertraline, a specific anxiety medication as he was suffering from severe anxiety. *Sina was not given any medication.* Sina informed Dr. Gordon of his asthma but did not get an inhaler prescription. As a result Sina suffered several debilitating asthma attacks. Sina informed Dr. Gordon of an ear infection in the end of June 2016.
> *See id.* at para. 25.
>
> On August 15, 2016 Sina's criminal defense attorney, Jerry Goldstein, sent a letter to Dr. Gordon, again requesting that Sina be given appropriate medications, accompanied with a copy of Dr. Arambula's August 5, 2016 letter. By this time, Sina's ear infection had progressed to the point that Sina permanently lost hearing, and his ear was oozing blood. *Sina was not given any medication.*
> *See id.* at para. 27.

There is no dispute that Plaintiff was a pretrial detainee during the period at issue in this civil action. Therefore, Plaintiff's claims for denial of medical care should be considered under the deliberate indifference standard applied through the Due Process Clause of the Fifth Amendment. *See Eriksen*, No. EP-15-CV-216-DB-ATB, 2015 WL 13804250, at *5; *Ogbolu v. U.S. Immigration & Customs Enforcement*, Civ. A. No. H-06-0115, 2006 WL 3152694, at *5 (S.D. Tex. Nov. 1, 2006). Plaintiff's Amended Complaint contains only conclusory statements that "individual defendants" were deliberately indifferent to Plaintiff's constitutional right to be secure in his basic

---

[1] Plaintiff has only stated that "several guards" encouraged prisoners to abuse him and that the beatings occurred under the supervision of GEO guards. Plaintiff does not allege that Dr. Gordon is a "guard". It is clear from the rest of Plaintiff's Amended Complaint that Dr. Gordon is not one of the "guards" that Plaintiff alleges encouraged prisoners to abuse him.

human needs. In his paragraphs regarding Dr. Gordon, Plaintiff only complains that he "was not given any medication." Not only does Plaintiff not allege that Dr. Gordon was personally involved in the decision not to give medication, but Plaintiff also fails to show how not giving medication was deliberately indifferent. He fails to demonstrate how Dr. Gordon had a culpable state of mind. Plaintiff does not allege that he received no treatment whatsoever, only that he did not receive medication. There is no evidence that Dr. Gordon refused to treat Plaintiff or acted with the purpose of inflicting unnecessary and wanton pain. Plaintiff has failed to meet the "extremely high standard" of deliberate indifference. For that reason, Plaintiff's claims for denial of medical care should be dismissed.

To bring a cause of action under the Fourteenth Amendment requires state action. *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998). In *McGuire*, the Court of Appeals for the Fifth Circuit was tasked with deciding whether a federal inmate could bring a *Bivens* action for violation of Fourteenth Amendment rights. *See Id.* at 322. The Court found, as a matter of law, that the plaintiff could not maintain a Fourteenth Amendment claim. *Id.* at 323. This case is analogous to *McGuire* in that Plaintiff has brought this suit against Defendants alleging that they were federal employees and actors. Neither the facts of the case nor Plaintiff's listed causes of action indicate there was any state action. For that reason, Plaintiff's Fourteenth Amendment claim must fail.

**2. Plaintiff has failed to properly state a cause of action against Dr. Gordon for denial of equal protection of the laws contained in the Due Process Clause.**

To establish a violation of the Fifth Amendment's prohibition of denial of equal protection of the laws contained in the Due Process Clause, Plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017).

Regarding Plaintiff's claim under Equal Protection Clause of the Fifth Amendment, the three paragraphs pertaining to Dr. Gordon in Plaintiff's Amended Complaint are conclusory, as there is no allegation that Dr. Gordon knew Plaintiff's race and intentionally treated him differently than prisoners of different races in providing or denying access to medications. Furthermore, Plaintiff fails to identify a similarly situated prisoner who received more favorable treatment from Dr. Gordon. Plaintiff's claims against Dr. Gordon for violation of the equal protection afforded under the Fifth Amendment should be dismissed.

The only three paragraphs in Plaintiff's Amended Complaint that implicate Dr. Gordon, which are included above, do not indicate a violation of Fourth, Fifth or Fourteenth Amendment rights. Plaintiff has not specifically alleged a violation of any other Amendment to the United States Constitution by Dr. Gordon. For these reasons, Plaintiff's *Bivens* causes of action and cause of action for denial of equal protection under the laws should be dismissed.

Even if Plaintiff has properly asserted *Bivens* claims against Dr. Gordon, dismissal is proper on those claims as detailed below.

**3. Plaintiff cannot bring a *Bivens* action against Dr. Gordon, a private individual.**

The decision in *Bivens* was limited to federal officers who had violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See id.*; *see also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854 (2017). The Court has continued to limit *Bivens* actions and has only allowed *Bivens*-type remedies in two other circumstances.[2] *See Ziglar*, 137 S.Ct. at 1854-55. Notably, the Court has only allowed *Bivens*-type remedies for violations of the Fourth, Fifth and

---

[2] The Court allowed *Bivens* actions by a former congressional employee for damages suffered as a result of her employer's unconstitutional discrimination based on gender and by the estate of a federal prisoner for damages suffered as a result of government officials' deliberate indifference to his medical needs. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 17-18 (1980); *see also Zigler*, 137 S.Ct. at 1854-55.

Eighth Amendments by federal officials. *See Bivens*, 403 U.S. at 397; *Davis*, 442 U.S. at 248-49; *Carlson*, 446 U.S. at 17-18; *see also Zigler*, 137 S.Ct. at 1854-55.

"[E]xpanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar*, 137 S.Ct. at 1848 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). A *Bivens*-type remedy should only be extended in new contexts after consideration of "special factors." *Ziglar*, 137 S.Ct. at 1848. The context is new if the case is different in a meaningful way from previous *Bivens* cases decided by the United States Supreme Court. *Id.* Potential differences include, but are not limited to, rank of officers involved, constitutional rights at issue, and presence of potential special factors not considered in previous *Bivens* cases. *See id.* A new *Bivens* remedy should not be created (1) "if there are special factors counselling hesitation in the absence of affirmative action by Congress" or (2) "where an alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Butts v. Martin*, 877 F.3d 571, 587-88 (5th Cir. 2017) (quoting *Ziglar*, 137 S.Ct. at 1857). The fact that a plaintiff can seek an alternative remedy through state tort law is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *See Minneci v. Pollard*, 565 U.S. 118, 125 (2012) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

*Rroku v. Cole*, a Fifth Circuit case decided in February 2018, is analogous to this case. In *Rroku*, a pretrial detainee brought suit against an individual employed by GEO Group for neglect in medical care. *See Rroku v. Cole*, 726 Fed.Appx. 201, 206 (5th Cir. 2018). The Fifth Circuit declined to create a *Bivens*-type remedy in *Rroku* as there were alternative remedies to his claims including under state tort law. *See id*. In this case, like in *Rroku*, Plaintiff has alleged the denial of

medical care against Dr. Gordon, who he alleges is employed by GEO Group.[3] As the Fifth Circuit found in *Rroku*, Plaintiff's *Bivens* causes of action against Dr. Gordon should be dismissed.

**B. Plaintiff has failed to properly state any cause of action for medical malpractice against Dr. Gordon.**

The elements of a health care liability claim, according to Texas law, are:

(1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant. *Rendon v. Walgreens*, 144 F.Supp. 3d 894, 897-98 (N.D. Tex. 2015) (citing *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014)).

A plaintiff must prove four elements in a medical malpractice claim under Texas law: "(1) a duty by a physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) injury or harm to the plaintiff; and (4) a causal connection between the breach of the applicable standard of care and injury or harm." *Coronel v. Providence Imaging Consultants, P.A.*, 484 S.W.3d 635, 638 (Tex.App.—El Paso 2016, pet. denied).

"[T]he duty to treat the patient with proper professional skill flows from the consensual relationship between the physician and patient, and only when that relationship exists can there be a breach of a duty resulting in medical malpractice." *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995). There must be some affirmative action to treat the patient to create a physician-patient relationship. *See Estrada v. Mijares*, 407 S.W.3d 803, 807 (Tex.App.—El Paso 2013, no pet.).

---

[3] Plaintiff alleges that Dr. Gordon is an employee of GEO Group. Dr. Gordon denies that he is employed by GEO Group as he was employed by a separate private corporation at the time of the events made the basis of this action. Regardless, the analysis is the same as Dr. Gordon is not a "federal officer" for the purposes of a *Bivens* claim but is, instead, employed by a private corporation. *See Rroku*, 726 Fed.Appx. at 204.

10

Plaintiff referenced his deposition throughout his First Amended Original Complaint and attached the deposition transcript to the Complaint. Plaintiff's deposition was made a part of his Complaint, and the testimony contained therein may be considered in the evaluation of this Motion. *See Lone Star Fund*, 594 F.3d at 387; *Collins*, 224 F.3d at 498-99.

Plaintiff claims that Dr. Gordon was negligent and is liable for medical malpractice by:

1) Performing an inadequate medical screening that failed to identify multiple health challenges experienced by Plaintiff;[4]

2) Provided substandard medical care by failing to treat Plaintiff's ear infection and asthma leading to both hearing loss and respiratory distress;

3) Not responding to Plaintiff's need for medication or missed doses of medication; and

4) Failing to diagnose a sexual assault of Plaintiff.

*See* Plaintiff's First Amended Original Complaint, Doc. # 57, para. 62.

Plaintiff's first allegation of medical malpractice is a conclusory allegation unsupported by any well-pleaded facts. Notably, Plaintiff fails to identify the "multiple health challenges" that would have been identified through an adequate medical screening. Furthermore, Plaintiff has not alleged any facts sufficient to show that Dr. Gordon even performed a medical screening, much less an inadequate one. There is also no indication as to when that inadequate medical screening took place. As shown above, there must be some affirmative action to treat the patient to create a physician-patient relationship, out of which Dr. Gordon's duty would arise. However, without any

---

[4] Here Plaintiff cites to an unknown source, "APHA, 11 LA, p. 25." This source was not attached to Plaintiff's Amended Complaint and is not identifiable by Defendant. Defendant reserves the right to amend this Motion attaching any such document cited to in Plaintiff's Amended Complaint. *See Lone Star Fund*, 594 F.3d at 387; *Collins*, 224 F.3d at 498-99.

facts as to when the medical screening occurred, Plaintiff has failed to plead facts sufficient to establish Dr. Gordon's duty.

Plaintiff's next two allegations of medical malpractice are similar in that they allege Dr. Gordon did not treat Plaintiff's ear infection or asthma and did not respond to Plaintiff's need for medication. However, this is directly contradicted in Exhibit 1 to Plaintiff's First Amended Original Complaint. Plaintiff admits that he received treatment for his ear infection on August 3, 2016 and that he received and started taking antibiotics for the infection. *See* Exhibit 1 to Plaintiff's First Amended Original Complaint, Doc. # 57-1, 209:8-15. In fact, he received 15 days of antibiotics. *See id.* at 280:22-281:2.

Furthermore, Plaintiff testified that Dr. Gordon was not a mental health expert and seemed to be a primary care physician. *See id.* at 275:19-24. As such, Dr. Gordon was not involved in the prescribing or adjustment of Zoloft for Plaintiff. *See id.* at 287:25-288:3. Therefore, Plaintiff was referred to those specializing in mental health, namely a psychologist and psychiatrist. *See id.* at 288:18-289:19.

In describing his fourth basis for medical malpractice, Plaintiff conclusorily states that Dr. Gordon "did not diagnose a sexual assault of [Plaintiff] even though Dr. Gordon conducted 'very thorough' genital examinations of client absent a clinical reason to do so." (internal citations omitted). This is the first mention in Plaintiff's Amended Complaint of a genital exam. During his deposition, when asked about his visit with Dr. Gordon for his hearing problem, Plaintiff stated that Dr. Gordon conducted a "very thorough" genital exam. *See id.* at 285:19-25. However, Plaintiff has failed to show how a genital exam would reveal sexual assault. Additionally, Plaintiff was asked about any discussions that he had with Dr. Gordon during his visit. *See id.* at 285:19-286:3. Plaintiff does not allege any facts that would suggest Dr. Gordon was informed about a

sexual assault or that Dr. Gordon knew about a sexual assault. By not pleading that Dr. Gordon had knowledge of a sexual assault, Plaintiff cannot then claim that Dr. Gordon was negligent by not evaluating Plaintiff for sexual assault and by not diagnosing sexual assault.

Plaintiff's Amended Complaint and Exhibit 1 to the Amended Complaint fail to indicate what is referred to as an "inadequate medical screening" or when that alleged medical screening occurred. Furthermore, the Amended Complaint and Exhibit 1 show that Plaintiff did receive treatment and medication, was referred to mental health staff, and subsequently received medical treatment for his mental health condition. Plaintiff has failed to plead facts sufficient to state a claim for medical malpractice regarding sexual assault. For these reasons, Plaintiff's state law claims for medical malpractice should be dismissed for failing to properly state any claim upon which relief could be granted.

## C. Dr. Gordon requests this Court dismiss Plaintiff's state law claims as there are no claims over which the Court has original jurisdiction.

When claims over which a Federal Court would not have original jurisdiction are so related to claims in the action within such original jurisdiction that they form "part of the same case or controversy under Article III of the United States Constitution," district courts have supplemental jurisdiction over the claims outside of the court's original jurisdiction. 28 U.S.C. § 1367. If all claims enjoying original jurisdiction in the federal court are dismissed, the district court may decline to extend supplemental jurisdiction to all other claims. *Id.* "Supplemental jurisdiction is a 'doctrine of discretion, not of plaintiff's right.'" *Marshall v. MarOpCo, Inc.*, 223 F.Supp.3d 562, 570 (N.D. Tex. 2017) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). The court should weigh factors, including judicial economy, convenience, fairness and comity, in deciding whether to exercise supplemental jurisdiction. *See id.* (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988). The Fifth Circuit's "general rule is to dismiss state

claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).

As Dr. Gordon has shown above, Plaintiff has not properly asserted any claim against him which enjoys original jurisdiction in the Federal Courts. Plaintiff's federal claims have already been dismissed against Codefendant Dr. Rodriguez by this Court. [5] *Moghtader v. GEO Group, Inc.*, 5:18-CV-632-XR, 2019 WL 2549232, at *6 (W.D. Tex. June 20, 2019). Only limited discovery has taken place so far in this lawsuit, including exchange of medical records and the depositions of Plaintiff, Edith Doty and Defendant Darius Blake. The Court issued an Order on September 10, 2019 vacating all remaining Scheduling Order deadlines, including the pretrial conference and trial settings. In addition, Plaintiff has still not served Defendant Randall and Dr. Morgan. The factors in this case do not lend themselves to the continued exercise of supplemental jurisdiction over Plaintiff's state law claims. Therefore, Dr. Gordon requests that this Court dismiss all pendant state law claims against him.

## IV.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Dempsey D. Gordon, Jr., DO respectfully requests that the Court grant his Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), dismiss all claims asserted by Plaintiff against Defendant Dr. Gordon and for such other and further relief to which he may be justly entitled.

---

[5] Defendant anticipates that all federal claims will be dismissed against all Defendants in this case as Plaintiff has failed to properly assert a *Bivens* cause of action against any Defendant when state remedies are available. *See Minneci*, 565 U.S. at 125; *Rroku*, 726 Fed.Appx. at 206.

Respectfully submitted,

KROGER BURRUS NELSON

By: _____
    Edward J. Kroger
    State Bar No. 11729700
    kroger@krogerlaw.com
    Colin P. Goodman
    State Bar No. 24099683
    goodman@krogerlaw.com
3100 Weslayan, Suite 300
Houston, Texas 77027
Telephone:    713.961.7952
Telecopier:    713.961.7953

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December 2019, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

| | |
|---|---|
| Randall L. Kallinen | [x] via certified mail/return receipt requested |
| KALLINEN LAW PLLC | [ ] via facsimile 713.893.6737 |
| 511 Broadway Street | [ ] via hand delivery |
| Houston, Texas 77012 | [x] via e-service |
| ATTORNEY FOR PLAINTIFF | [ ] via email   *AttorneyKallinen@aol.com* |
| | |
| Shawn Fitzpatrick | [ ] via certified mail/return receipt requested |
| FITZPATRICK & KOSANOVICH, P.C. | [ ] via facsimile |
| P.O. Box 831121 | [ ] via hand delivery |
| San Antonio, Texas 78283 | [x] via e-service |
| ATTORNEY FOR DEFENDANT THE GEO GROUP, INC. | [ ] via email   *skf@fitzkoslaw.com* |
| | |
| Lucretia R. Marmor | [ ] via certified mail/return receipt requested |
| Natalie S. Wilson | [ ] via facsimile 210-735-6889 |
| LANGLEY & BANACK, INC. | [ ] via hand delivery |
| Trinity Plaza II, Suite 700 | [x] via e-service |
| 745 East Mulberry Avenue | [ ] via email   *lmarmor@langleybanack.com* |
| San Antonio, Texas 78212 | *nwilson@langleybanack.com* |
| ATTORNEYS FOR DEFENDANT ROSARIO RODRIGUEZ, MD | |

 

_____
Edward J. Kroger