**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SINA MOGHTADER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | Civil Action No.  SA-18-CV-632-XR |
| | § | |
| GEO GROUP, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered the Motion to Dismiss First Amended Complaint filed by Defendant Dr. Rodriguez (docket no. 62), the Motion for Judgment on the Pleadings filed by Defendant Dempsey Gordon (docket no. 67), the Motion to Dismiss filed by Defendants Blake and GEO Group, Inc. (docket no. 70), and the issue of service on Defendants Randall and Morgan. After careful consideration, the Court grants Dr. Rodriguez's motion, dismisses the unserved defendants pursuant to Rule 4(m), dismisses all federal claims on the merits, and dismisses the remaining state-law claims without prejudice under 28 U.S.C. § 1367(c).

### Background

Plaintiff Sina Moghtader filed this civil rights action in June 2018 against GEO Group, Inc. and several individual defendants, complaining of events that occurred while he was detained without bond on federal charges at a GEO facility. Defendants GEO Group and Gordon were served and filed answers, and a Scheduling Order was issued. Defendant McPherson filed a motion to dismiss for lack of proper service pursuant to Rule 4(m), to which Plaintiff did not respond, and the Court granted the motion on November 5, 2019.

The Court held a status conference on November 5, 2018, at which time it granted Plaintiff's motion for an additional two-month extension to serve Defendants Morgan and Rodriguez. Defendant Blake filed an answer on November 19. On January 24, 2019, the Court issued a Show Cause Order regarding the lack of proof of service on Defendants Morgan and Rodriguez. Plaintiff moved for additional time for service, and Rodriguez, who had been served by that time, moved to dismiss. Defendants GEO Group and Blake also filed a motion for summary judgment.

The Court held a telephone hearing on February 28, and granted Plaintiff's request to extend the service deadline as to Rodriguez and Morgan (who had not yet been served). Defendant "JIE", the grievance officer who had denied Plaintiff's request for medical attention by noting that the grievable time period had expired, was revealed to be Edith Doty, and "JIE" was dismissed. GEO Group and Blake agreed to dismiss their motion, subject to re-urging after Plaintiff had been given an opportunity to conduct some discovery and amend his Complaint. Plaintiff filed an Advisory on May 9 stating that Plaintiff and certain other individuals had been deposed and he planned to amend his complaint by May 17, 2019.

On June 20, the Court issued an order granting Dr. Rodriguez's motion to dismiss, but also granted Plaintiff leave to amend to attempt to state a claim for medical malpractice. Because Plaintiff had not yet filed an amended complaint and to keep the case moving, the Court ordered Plaintiff to file his amended complaint as to all parties. Docket no. 53. Plaintiff filed his Amended Complaint on August 12, 2019. Docket no. 57.

The Amended Complaint asserts claims against GEO Group, Gordon, Morgan, Rodriguez, Blake, and Captain Randall (previously identified as Randolph). Consistent with the agreement to dismiss JIE, the Amended Complaint no longer lists JIE as a defendant, but also does not clearly attempt to add Edith Doty as a defendant. Plaintiff complains of Doty's actions within the body of

2

the Complaint, but does not list her among the parties or in the caption. Nor is there any indication that Plaintiff has requested summons or attempted to serve her. Thus, at this time, the Court finds that Edith Doty is not a party. In the event she could be considered a party, the claims against her are dismissed under Rule 4(m) for failure to serve.

Dr. Gordon, GEO Group, and Blake have filed answers. Docket nos. 59, 60, & 61. Dr. Rodriguez has again move to dismiss. Randall and Morgan have still not been served. Dr. Gordon filed a motion for judgment on the pleadings, and Defendants Blake and GEO Group have re-urged their motion.

## Discussion

### Defendant Randall and Defendant Morgan – dismissal under Rule 4(m)

On September 10, 2019, the Court noted that there was still no indication that Defendant Randall and Defendant Morgan had been served and ordered Plaintiff to show cause in writing, no later than September 24, 2019, why Dr. Morgan and Defendant Randall should not be dismissed for lack of service under Rule 4(m). Docket no. 63. Plaintiff did not do so, and thus the Court will consider whether dismissal of the claims against Defendant Randall and Defendant Morgan is warranted.

While ordinarily a dismissal under Rule 4(m) operates without prejudice, if the claims would be barred by limitations upon re-filing, the dismissal may be in effect with prejudice, which is appropriate only when there is "a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice." *Griggs v. S.G.E. Mgmt., LLC*, 905 F.3d 835, 844 (5th Cir. 2018). "In most cases, a plain record of delay or contumacious conduct is found if one of the three aggravating factors is also present: (1) delay caused by the plaintiff; (2) actual prejudice to the defendant; or (3) delay as a result of intentional

conduct." Here, there is a clear record of delay, and lesser sanctions would not serve the best interests of justice, as this case is ready for disposition as to the other defendants and they would be prejudiced by further delays required by introducing a new defendant at this time. Thus, Defendants Randall and Morgan are dismissed pursuant to Rule 4(m).

**Defendant Dr. Rosario Rodriguez – motion to dismiss**

The Court previously dismissed Plaintiff's constitutional claims (under both § 1983 and *Bivens*) against Dr. Rodriguez, but gave Plaintiff leave to amend to attempt to state a claim for medical malpractice under state law after some limited discovery. Plaintiff filed his Amended Complaint and has attached his entire deposition thereto. Factual allegations supporting Plaintiff's claim against Dr. Rodriguez are contained in paragraph 26 of the Amended Complaint, which states:

> 26. On August 6, 2016 Sina filed another formal request for medical attention. Officials responded to this grievance by writing "Records show you were seen by Psych Dr. Morgan who referred you to Dr. Rodriguez Psychiatrist who is the only one authorized to prescribe medication." Sina was not given any medication. Sina saw Dr. Rodriguez via video conferencing with Dr. Morgan present at the end of August 2016. Dr. Rodriguez prescribed Zoloft for Sina but [Sina] did not receive it. At this time Sina also told Dr. Rodriguez in the presence of Dr. Morgan that Sina's food was being taken and that he was being beaten by inmates because of Blake and Randall encouraging prisoners to mistreat Sina by referring to him as a terrorist and indicating inmates would not be disciplined for mistreatment. Neither Dr. Morgan nor Dr. Rodriguez reported these concerns to the appropriate GEO personnel.

In a later "medical malpractice" section of his Complaint, which Plaintiff states includes "additional facts," he asserts (1) Dr. Rodriguez did not conduct a psychiatric screening of Plaintiff upon admission, which would have quickly revealed treatable psychiatric problems; (2) Plaintiff did not consent to a distance-based medicine consultation and an in-person interview may have

revealed Plaintiff's serious psychiatric condition; and (3) Rodriguez failed to notify the detention facility staff of Plaintiff's claims of assault or food theft, resulting in significant weight loss.

A plaintiff must prove four elements in a medical malpractice claim under Texas law: "(1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) injury or harm to the plaintiff; and (4) a causal connection between the breach of the applicable standard of care and the injury or harm." *Coronel v. Providence Imaging Consultants, P.A.*, 484 S.W.3d 635, 638 (Tex. App.—El Paso 2016, pet. denied). The Court previously found that Plaintiff had failed to plead sufficient facts establishing a doctor-patient relationship, but Plaintiff amended his complaint to sufficiently allege that such a relationship existed. Dr. Rodriguez now moves to dismiss on elements (2) through (4) – no breach of the standard of care, and no injury or harm to Plaintiff caused by such breach.

More specifically, Dr. Rodriguez contends that the allegations that she failed to conduct an initial psychiatric screening or an in-person interview are conclusory because Plaintiff fails to state what "treatable psychiatric problems" Dr. Rodriguez failed to identify and fails to allege a serious psychiatric condition that went undiagnosed or untreated after his initial visit. Dr. Rodriguez further notes that Plaintiff admitted in his deposition (attached to his Complaint) that Dr. Rodriguez obtained a thorough and accurate medical history from him, including a history of his mental health treatment for anxiety, attention deficit disorder, and learning disabilities, among others. Depo. at 236-242, 244. Thus, Dr. Rodriguez contends that the allegation that she failed to conduct an appropriate screening is demonstrably false and cannot be treated as a "well pleaded fact." She further notes that Plaintiff testified that he received Setraline/Zoloft within two days of his visit with Dr. Rodriguez and from that point (approximately September 18, 2016) until he was released from custody in or about April 2017, his anxiety was alleviated with that medication. Depo. at 245,

246, 251-256. Dr. Rodriguez contends that the allegation that she failed to give Plaintiff his anxiety medication is belied by his own deposition testimony that he received the medication after the visit and that his anxiety improved and he had no further panic attacks. Depo. at 246, 251. He also testified that Dr. Rodriguez was not the individual responsible for actually dispensing medications to him while in custody. Depo. at 246. Thus, Dr. Rodriguez contends that Plaintiff admits that Dr. Rodriguez properly and effectively treated the condition for which he sought treatment. Dr. Rodriguez also asserts that, pursuant to section 111.002 of the Texas Occupations Code, the treating physician is required to obtain the consent of the patient or someone authorized to make health care decisions on the patient's behalf before receiving services, and Plaintiff admits in his deposition that such consent was obtained prior to his initial treatment with Dr. Rodriguez. Depo. at 233. Thus, Dr. Rodriguez contends, Plaintiff admits consent and that he was treated, and the allegation that Dr. Rodriguez might have discovered some other serious psychiatric condition if she had conducted an in-person interview is not a well pleaded fact.

In response, Plaintiff objects to Rodriguez's use of facts from his deposition to the extent they contradict the allegations in his Amended Complaint. While he does not dispute that he attached his entire deposition to his Complaint, he contends that the Court may consider only documents referenced in the complaint and central to the plaintiff's claim. However, he also seeks to rely on all the facts asserted within his deposition, even if not pleaded. But Plaintiff cannot have it both ways. If the deposition is intended to be incorporated into the Complaint, then all of its factual allegations are incorporated.

Plaintiff also cites to the incorrect standard for 12(b)(6) motions that the court may not dismiss under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The *Conley v. Gibson* standard was

expressly "retired" in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 563 (2007): "[T]his famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Plaintiff then asserts he is not required to plead specific facts, citing cases discussing constitutional claims, and generally repeats the allegations from the Amended Complaint. He responds specifically only on three issues: (1) regarding the alleged failure to conduct psychiatric screening, he adds that "Dr. Rodriguez viewed Mr. Moghtader and was aware of his name" and cites APHA V.3(a)(1), a source he does not identify or provide; (2) regarding telecommunication consent as opposed to an in-person visit, he cites Texas Civil Practice & Remedies Code § 74.101 governing informed consent, and (3) regarding his allegation that Dr. Rodriguez failed to notify the detention facility of his assault and food theft, resulting in significant weight loss, he asserts that "[a] physician who does not monitor a patient for a known condition can be liable for injuries resulting from that condition," citing *Chambers v. Conway*, 883 S.W.2d 156, 158 (Tex. 1993).

The Court need not decide whether the facts relied upon by Dr. Rodriguez in Plaintiff's deposition can be considered without converting the motion to one for summary judgment because, considering only the allegations of the Amended Complaint, Plaintiff fails to plausibly allege a claim for medical malpractice against Dr. Rodriguez. Based on publicly available criminal records of which this Court takes judicial notice, Plaintiff was arrested June 23, 2016 and he was ordered detained without bond on July 6, 2016. Plaintiff alleges that Dr. Rodriguez failed to conduct an initial screening, and that such a screening would have revealed his psychiatric problems, including presumably his PTSD. But Plaintiff fails to allege any facts from which one could reasonably infer that Dr. Rodriguez personally had any duty to conduct initial psychiatric screenings on pretrial

detainees such as Plaintiff, or that her failing to conduct an initial screening was a breach of the standard of care (presumably there was not even a doctor-patient relationship at the time of his initial detention).

Plaintiff further alleges that he "saw Dr. Rodriguez via video conferencing with Dr. Morgan present at the end of August 2016. Dr. Rodriguez prescribed Zoloft for Sina but [Sina] did not receive it." He further alleges that he did not consent to a distance-based medicine consultation and an in-person interview may have revealed Plaintiff's serious psychiatric condition. However, Plaintiff does not allege what "serious psychiatric condition" he was suffering from that was undiagnosed at this time, other than severe anxiety. It is undisputed that by this time, Plaintiff had already been evaluated by Dr. Arambula, who had recommended anxiety medication. Plaintiff alleges that Dr. Rodriguez prescribed medication for him. Plaintiff does not allege that Dr. Rodriguez was responsible for the fact that Plaintiff may not have received the medication. Thus, Plaintiff fails to allege a breach of the standard of care.

To the extent Plaintiff contends that he did not consent to distance-based treatment, he attempts to assert an informed consent claim. To establish a prima facie case against a physician for failure to obtain informed consent, a plaintiff must generally establish (1) that the physician had a duty to obtain the patient's informed consent, (2) that the physician breached that duty, (3) that the patient suffered injury as a result, and (4) that the patient's breach was the proximate cause of the patient's injury. Texas law creates a duty to obtain consent to telemedicine services. The Texas Occupations Code § 111.02 provides, "A treating physician or health professional who provides or facilitates the use of telemedicine medical services or telehealth services shall ensure that the informed consent of the patient, or another appropriate individual authorized to make health care treatment decisions for the patient, is obtained before telemedicine medical services or telehealth

services are provided." Even if we accept as true Plaintiff's allegation that he did not consent, Texas Civil Practice & Remedies Code § 74.101 limits the theory of recovery for informed consent actions to "negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." Plaintiff fails to allege that he was not informed of potential risks or consequences of telemedicine and that, had he known of the risks or consequences, he would not have consented to telemedicine. Moreover, he fails to plausibly establish that any psychiatric condition went undiagnosed or untreated because of the use of telemedicine, as he pleads only that he suffered from anxiety, but also pleads that Dr. Rodriguez prescribed him medication. Thus, he alleges no plausible claim for the failure to disclose the risks or hazards of a telemedicine consultation and the alleged lack of consent thereto.

Plaintiff alleges that, in August 2016, he told Dr. Rodriguez that his food was being taken and that he was being beaten by inmates because of Detention Officers Blake and Randall encouraging prisoners to mistreat him by referring to him as a terrorist and indicating inmates would not be disciplined for mistreatment, but Dr. Rodriguez failed to report these concerns to the appropriate GEO personnel, resulting in significant weight loss. In response, Dr. Rodriguez notes that Plaintiff admits that she ordered various tests and referred him to see a medical doctor related to his weight loss. Depo. at 242-43. But that fact does not address Plaintiff's allegations that the failure to report the abuse was a breach of the standard of care. Some courts have recognized a cause of action for medical negligence based on failure to report child abuse, but others have not, finding that the duty to provide reasonable medical care does not include diagnosing and preventing abuse. *E.g.*, *E.P. ex rel. Portenier v. United States*, 835 F. Supp. 2d 1109, 1117 (D. Kan. 2011) (discussing cases). This case involves alleged abuse of an adult. The Court finds that Texas courts

would not recognize a claim for medical negligence based on a failure to report abuse because the law does not recognize a duty for physicians to protect adult patients from the harmful acts of others.

Plaintiff makes no specific allegations regarding Dr. Rodriguez for failing to treat his ear infection or injuries from his beatings, and thus those claims, to the extent they are brought, are dismissed for failure to state a claim. Accordingly, the remaining medical malpractice claims against Dr. Rodriguez are dismissed pursuant to Rule 12(b)(6).

**Defendant Dempsey Gordon – motion for judgment on the pleadings**

Defendant Gordon moves for a judgment on the pleadings under Rule 12(c). Dr. Gordon contends that Plaintiff fails to state a *Bivens* action because there is no indication that he refused to treat Plaintiff or acted with the purpose of inflicting unnecessary and wanton pain to show deliberate indifference for a due process claim, and he fails to identify a similarly situated prisoner who received more favorable treatment for an equal protection claim. Dr. Gordon further asserts that any claim under the Fourteenth Amendment under § 1983 would fail because he is not a state actor. Dr. Gordon further asserts that all Plaintiff's *Bivens* claims are precluded because he is a private actor, and *Bivens* should not be extended to apply to him.

Plaintiff does not respond to the motion to dismiss the constitutional claims, perhaps realizing that this Court's prior order concerning Dr. Rodriguez would apply equally to the claims against Dr. Gordon. Accordingly, the Court will dismiss Plaintiff's constitutional claims against Dr. Gordon because there is no state action for § 1983 purposes and *Bivens* does not provide a remedy here, leaving only the state-law medical malpractice claims, which are dismissed without prejudice under § 1367 as discussed below.

**Defendants GEO Group and Detention Officer Blake – motion to dismiss**

Defendant GEO and Blake move to dismiss under Rules 12(b)(1) and 12(c), and also move for summary judgment. Defendants move the Court to (1) dismiss all federal constitutional claims because there is no state action under § 1983 and *Bivens* does not provide a remedy, (2) dismiss all constitutional claims against GEO because Plaintiff has failed to plead sufficiently under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), (3) dismiss the ADA and Rehabilitation Act claims, (4) dismiss the medical malpractice claim against GEO, and (5) dismiss the state-law claims under the Court's discretionary authority to dismiss state-law claims when no federal claims remain.

§ 1983 claims against GEO and Blake

Any federal constitutional claims brought against GEO and its employee Blake under § 1983 are dismissed for lack of state action because private persons under contract to confine federal prisoners and their employees do not act under color of state law. *Sandoval v. Wackenhut*, 21 F.3d 1109, at *2 n.3 (5th Cir. 1994) ("Because Sandoval was a federal prisoner in the facility, which Wackenhut was under contract with the federal government to operate, his claims cannot be based on § 1983, because no state action was involved."); *Eltayib v. Cornell Companies, Inc.*, 533 F. App'x. 414, at *414-15 (5th Cir. 2013) ("Cornell, GEO, and their employees are not subject to suit as state actors under § 1983. BSCC is a federal prison and '§ 1983 applies to constitutional violations by state, rather than federal, officials.'); *Manjarrez v. Bureau of Prisons, Warden*, No. PE-10-CV-00016-RAJ, 2011 WL 7323564, at *5-6 (W.D. Tex. June 28, 2011).

*Bivens* claims against GEO and Blake

In *Bivens v. Six Unknown Federal Narcotics* Agents, 403 U.S. 388 (1971), the Supreme court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. Blake and GEO argue there is no *Bivens*

claim available against them because the Supreme Court declined to extend *Bivens* to private

corporations like GEO in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) and their

employees in *Minneci v. Pollard*, 565 U.S. 118 (2012).

The Supreme Court declined to extend *Bivens* to private corporate entities acting under color

of federal law in *Malesko*. There, the plaintiff sued Correctional Services Corporation, which was

under contract with the federal Bureau of Prisons ("BOP") to house federal prisoners and detainees.

The Supreme Court noted that it had extended *Bivens* to provide an otherwise nonexistent cause of

action against individual federal officers alleged to have acted unconstitutionally in violation of the

Fifth Amendment and Eighth Amendment and to provide a cause of action for a plaintiff who lacked

any alternative remedy for harms caused by the individual officer's unconstitutional conduct. But

after *Carlson v. Green*, decided in 1980, the Supreme Court has otherwise rejected invitations to

extend *Bivens*, even for constitutional claims against individual federal officials.

In *FDIC v. Meyer*, 510 U.S. 471, 485 (1994), the Court declined to extend *Bivens* to claims

against federal agencies, noting that "the purpose of *Bivens* is to deter *the officer*," not the agency.

*Malesko*, 534 U.S. at 69-70. Threat of suit against the individual's employer is not the kind of

deterrence contemplated by *Bivens*, as claimants would focus their collection efforts on it, rather

than the individual directly responsible for the alleged injury. *Id.* at 70-71. Further, the Court

reasoned there was no compelling reason to provide a federal remedy to federal prisoners against

private corrections companies when none would be available against the federal government to

federal prisoners in federal facilities because they cannot sue the BOP or the United States. *Id.*, at

72. Last, the Court noted the availability of effective and often superior tort remedies, such as

negligence claims, against private entities that are unavailable to prisoners housed in Government

facilities. *Id.* The Court therefore declined to extend *Bivens* to private corporations under contract to confine federal prisoners.

Plaintiff alleges that GEO is a private corporation under contract to confine federal prisoners, and Plaintiff was a federal detainee at all relevant times. Therefore, *Malesko* controls, and Plaintiff has no *Bivens* claim against GEO arising from events at CTDF. *See Fabian v. Dunn*, No. SA-08-CV-269-XR, 2009 WL 2461207, at *4 (W.D. Tex. Aug. 6, 2009) ("There is no private right of action, pursuant to *Bivens*, for damages against private entities such as Cornell Companies, Inc. that engage in alleged constitutional deprivations while acting under color of federal law."). Plaintiff's *Bivens* claims against GEO claims must be dismissed.

GEO also argues that Plaintiff's claims for injunctive relief against GEO, in which he asks the Court to order GEO to implement and train employees in the importance of not inciting violence between inmates and not denying inmates access to needed medical care, fail under *Bivens* because the remedy in *Bivens* is for damages only, and because "a *Bivens* claim is not 'a proper vehicle for altering an entity's policy.'" Docket no. 70 at 9-10. However, Plaintiff's claim for injunctive relief became moot upon his release. *Diaz v. Dixon*, No. 5:13-CV-00130-C, 2014 WL 1744110, at *3 (N.D. Tex. May 1, 2014) (citing *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (noting the "transfer of a prisoner out of an institution often will render his claims for injunctive relief moot"); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding plaintiff's transfer from the allegedly offending facility to another facility "rendered his claims for declaratory and injunctive relief moot")).[1]

---

[1] The Court need not address GEO'S argument that any *Bivens* claims do not satisfy the pleading requirements for municipal liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 692 (1978)..

As to the *Bivens* claims against Blake, in *Minneci v. Pollard*, 565 U.S. 118 (2012), the Supreme Court considered the claims for violation of the Eighth Amendment by a prisoner at a federal facility operated by a private company against a security officer and several members of the medical staff, claiming they had deprived him of adequate medical care. Although the Court recognized that it had permitted a *Bivens* claim when a federal prisoner sought damages from personnel employed by the government, the fact of government employment status "makes a critical difference." *Id.* at 126. The Court held the prisoner could not assert a *Bivens* claim against private prison employees because the claim focused upon the kind of conduct that typically falls within the scope of traditional state tort law, and adequate alternative remedies were available under such law. *Id.* at 125-26. The Court noted that such laws imposing general duties of reasonable care (including medical care) on prison employees were available in states where privately managed secure federal facilities were located, and cited *Salazar v. Collins*, 255 S.W.3d 191 (Tex. App.–Waco 2008, no pet.) for Texas. The Court reasoned that such state tort laws would provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims. *Minneci*, 565 U.S. at 130.

GEO and Blake assert that *Minneci v. Pollard* forecloses Plaintiff's *Bivens* claims against Blake. Following *Minecci v. Pollard*, the Fifth Circuit has held in several unpublished opinions that employees of private corporations that operate federal prisons are not liable as federal actors under *Bivens* for Eighth Amendment violations if the conduct is the type that typically falls within the scope of traditional tort law. *See Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam) ("GEO and its employees cannot be liable as private actors under *Bivens*."); *Eltayib*, 533 F. App'x 414, 415 (5th Cir. 2013); *Oriakhi v. GEO Group, Inc.*, 579 F. App'x 292 (5th Cir. 2014). In fact, these cases involved employees of GEO Group-operated federal prisons. *Id.*

However, in *Minecci v. Pollard*, the Supreme Court expressly left open the question whether to imply a *Bivens* action "in a case where an Eighth Amendment claim or state law differs significantly from those at issue here when and if such a case arises." 565 U.S. at 130-31. Further, because this case involves a different constitutional amendment (the Fifth Amendment), this is arguably a new context. *See Rroku v. Cole*, 726 F. App'x 201, 2016 (5th Cir. 2018) ("The scenario here is slightly different than *Pollard*—Rroku's clam is under the Fifth, rather than the Eighth, Amendment. The Court has cautioned that markedly similar claims brought under different amendments should not automatically be considered analogous. Thus, *Pollard* does not expressly bar Rroku's claim, arguably making this a new context.")(citation omitted). In *Rroku*, the Fifth Circuit declined to extend *Bivens* to claims by a pretrial detainee in a federal ICE facility run by GEO under the Fifth Amendment for neglect in medical care, noting that the availability of a state tort law claim can qualify as a convincing reason to refrain from creating a *Bivens* right and remedy. *Rroku*, 726 F. App'x at 206.

However, the underlying facts of the claim against Blake are more egregious than those alleged in *Minneci v. Pollard*. Plaintiff alleges that, once interned at GEO's facility, "several guards" encouraged prisoners to abuse him, and, as a result, he was severely beaten by a group of prisoners under the supervision of GEO guards. Plaintiff alleges that he was told that if he reported anything, he would be beaten again or killed, which terrified him into silence. He alleges that inmates began taking his food under the threat of further violation, while under the supervision of GEO guards, and that guards prevented his access to medical care. Later in the Amended Complaint he alleges that throughout the time period of July through September 2016, "guards, including two guards on the seventh floor named Captain Randall and Darius Blake, continued to encourage inmates to further abuse" him, and he was "again beaten by inmates under guard supervision in

October 2016" and his food was routinely taken by inmates under GEO guard supervision. Am. Compl. Para 30. Plaintiff alleges he was beaten again in November 2016 under the supervision of GEO guards, including Randall and Blake. *Id*. para. 31. Plaintiff alleges that, when he was released, he had lost 75 pounds, suffered nerve damage, had to have teeth repaired, required physical therapy, and permanently lost his hearing. *Id.* para. 32. Plaintiff alleges that the individual defendants "violated Sina's Fourth Amendment and Fourteenth Amendment rights, at least, when they encouraged other prisoners to attach Sina, and displayed deliberate indifference to Sina's medical needs in denying him access, at least, to medical care for his wounds, severe ear infection, and need for anxiety medication under the 5th Amendment." *Id.* para. 42.

Blake asserts that *Bivens* has not been expanded to provide a remedy against a defendant who encourages another person to injure or deprive a plaintiff of medical care, nor to the alleged denial of nutrition by other prisoners, and thus recognizing the claims here would be an expansion. Docket no. 70 at 12. GEO and Blake contend that Plaintiff has adequate alternative remedies in state actions for negligence and gross negligence, noting that Texas courts enforce broad duties on jailers to use all reasonable efforts to protect detainees from harm. *Id.* at 13. Defendants assert that Texas also provides a remedy (assault) against a person who solicits, directs, encourages, or otherwise gives aid to another person to injure a plaintiff. *Id.*

The Court concludes that no *Bivens* action should be implied against Blake because adequate state-law remedies exist. The state of Texas law remains the same as it was when *Minecci v. Pollard* was decided. Texas courts have recognized the duty in Restatement (Second) of Torts § 320, which provides: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable

16

care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control. RESTATEMENT (SECOND) OF TORTS § 320 (1965); *Salazar v. Collins*, 255 S.W.3d 191, 200–01 (Tex.App.-Waco 2008, no pet.); *Tex. Dep't of Mental Health & Mental Retardation v. McClain*, 947 S.W.2d 694, 697–87 (Tex.App.-Austin 1997, writ denied).

The Supreme Court in *Minneci v. Pollard* cited *Salazar v. Collins*, 255 S.W.3d 191 (Tex. App.–Waco 2008, no pet.), as providing adequate state law remedies. In *Salazar,* an inmate brought an action for negligence and gross negligence against prison administrators after he was attacked by a fellow prisoner. The Waco Court of Appeals concluded that TDCJ and its officials and employees who exercise supervisory authority in its prisons have a special relationship with TDCJ inmates and thus owe a duty of reasonable care to protect inmates from harm when that harm is reasonably foreseeable. *Id.* at 203. This Court has previously said that *Salazar* could be extended to apply to individual jailers. *Doe v. Geo Group, Inc.*, No. SA-16-CV-173-XR, 2017 WL 835209, at *5 (W.D. Tex. Mar. 2, 2017). Another federal district court has found a special relationship imposes a duty on the officers guarding a federal detainee to protect them from sexual abuse by other guards. *Cuevas v. Westerman*, No. 1:14-CV-133, 2018 WL 6579041, at *5 (S.D. Tex. June 15, 2018) ("In this Court's previous decision, it held that a special relationship did exist between May and Cuevas because Cuevas was a detainee of the Government, and May was one of the officers guarding her.").

In *Fabian v. Dunn*, this Court concluded that no *Bivens* remedy would be available to unaccompanied minors who alleged abuse by employees of the detention center because the minors

would have state claims of assault and battery available. 2009 WL 2461207, at *5. Another judge in this district has concluded that *Bivens* should not be extended to claims by a pretrial detainee against individual defendants for assault because Texas general tort duties would apply. *Tavares v. LaSalle Corrs. Emerald Corr. Mgmt. W. Tex. Det. Ctr.*, No. EP-17-CV-00289-PRM-RFC, 2018 WL 2452977, at *3 (W.D. Tex. May 31, 2018). Further, as GEO and Blake recognize, Texas law permits a claim for assault against those who incite or encourage an assault. *Stein v. Meachum*, 748 S.W.2d 516, 518 (Tex. App.–Dallas 1988, no writ).

Accordingly, because alternative state tort-law remedies are available, the Court finds that no *Bivens* remedy should be implied, and the constitutional claims against Blake should be dismissed.

### ADA and Rehabilitation Act claims against GEO

Plaintiff asserts claims against GEO under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Plaintiff alleges that Title II of the ADA "applies to the County" and "affirmatively requires that governmental agencies and recipients of federal funds modify and accommodate their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities." Am. Compl. Para 49. Plaintiff further alleges that the GEO Group has been, and is, a recipient of federal funds, and thus must comply with Section 504's mandate. *Id.* para. 50. Plaintiff alleges that "GEO Group acts with the apparent authority of the U.S. Marshal Service and its prison qualifies as a program and service for purposes of Title II of the ADA and Section 504." *Id.* para. 51.

GEO moves to dismiss the ADA claim for failure to state a claim because GEO is not a local government or public entity to which the ADA would apply. Plaintiff asserts his ADA claim under Title II, which applies to public entities and prohibits discrimination by such entities. 42

U.S.C. § 12131-12132. "Public entity" is defined as: (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49). 42 U.S.C. § 12131. Although Plaintiff alleges that Title II applies to "the County," such allegation is irrelevant, as it appears undisputed that GEO is not a County. Plaintiff's Title II ADA claim is dismissed.

GEO moves to dismiss the Rehabilitation Act claim because GEO does not receive federal financial assistance as required by the Rehabilitation Act. Section 504 applies only to federal agencies and entities receiving federal financial assistance. *Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015). To state a claim under the Rehabilitation Act, "a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Id.* (quoting *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir. 1997)); 29 U.S.C. § 794(a). Plaintiff expressly alleges that the "GEO Group has been, and is, a recipient of federal funds." Am. Compl. Para. 50. In *Taylor*, the Fifth Circuit held that an allegation that the City "receives federal funds for the police department" was sufficient to state a claim because the department was a specific program or entity. Similarly, an entire corporation or private organization may be a specific program or entity under the Rehabilitation Act if assistance is extended to such corporation or organization as a whole. 29 U.S.C. § 794(B)(3)(A). Thus, the motion to dismiss this claim must be denied, and the Court will consider this as a motion for summary judgment.

GEO contends, as a matter of law, that it merely contracts with the federal government and procurement contracts do not constitute federal financial assistance where the recipient receives no government subsidy for its service but rather acts solely as a market participant. Docket no. 70 at

17. GEO contends that "[i]t does not receive federal assistance of the kind that would subject it to claims under § 504." *Id.* Although GEO provides no summary judgment evidence to support this assertion, this is an element of Plaintiff's claim on which Plaintiff bears the burden of proof. The motion may therefore be considered as a no-evidence motion for summary judgment. Plaintiff fails to respond to GEO's motion to dismiss this claim, fails to put forth any evidence that GEO received federal financial assistance, and fails to move to continue consideration of this issue pending discovery under Rule 56(d). Accordingly, summary judgment is granted on Plaintiff's § 504 claim. *See Nottingham v. Richardson*, 499 F. App'x 368, *6 (5th Cir. 2012) ("Nottingham offered no evidence that the Randall County jail received federal funds, so the RA is inapplicable to his claims.").

### **Whether to Dismiss Remaining State-Law Claims?**

This Court has federal question jurisdiction over Plaintiff's constitutional claims despite finding no available remedy. *See Peoples v. CCA Detention Ctrs.*, 422 F.3d 1090, 1096 (10th Cir. 2005). Thus, it has supplemental jurisdiction over his related state-law claims for negligence and gross negligence against GEO and Blake, and the remaining medical malpractice claims against GEO and Dr. Gordon. Defendants assert, however, that the Court should exercise its discretion to dismiss the remaining state-law claims because no federal claims remain.

Section 1367 authorizes a court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The Court considers judicial economy, convenience, fairness, and comity. "The general rule is that a court

should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

This case has been pending since 2018. The Court has invested some judicial resources, but only limited discovery has been conducted, and the remaining state-law claims of negligence, gross negligence, and medical malpractice[2] have not completed discovery and are not ripe for disposition via summary judgment. Fifth Circuit case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims after investing a *significant* amount of judicial resources in the litigation, the district court abuses its discretion. *Id.* However, in those cases, generally significantly more judicial resources have been expended, discovery has been completed, and the claims were ripe for disposition via summary judgment.

In *Brookshire Brothers*, the district court abused its discretion when the case had been pending three years and the litigation generated more than 1300 docket entries, and the court decided forty-one dispositive motions. This case is distinguishable. *See Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rough Parish*, 373 F. App'x 438 (5th Cir. 2010) ("The parties have not yet filed motions *in limine*, the district court has not ruled on the admissibility of any significant amount of evidence, the parties have yet to brief the remaining state law issues on the merits, and no trial date has been set. As the district court put it, the case—whittled to the few remaining state claims—

---

[2] The Court notes that, after conducting a cursory review of Dr. Gordon's 12(c) motion as to the medical practice claims, the motion would be denied at least as to some claims, and thus the Court finds it more appropriate to decline jurisdiction over the state-law claims against Dr. Gordon along with the other remaining claims against GEO and Blake.

has "only recently 're-started' " and "trial is not imminent." Nor do the defendants contend that the discovery conducted in federal court will be unusable in subsequent state proceedings."). Accordingly, the Court will exercise its discretion to dismiss all remaining state-law causes of action against Dr. Gordon, Blake, and GEO.

## Conclusion

Dr. Rodriguez's motion to dismiss (docket no. 62) is GRANTED, and the medical malpractice claim against her is dismissed with prejudice. Because the Court previously dismissed Plaintiff's other claims against Dr. Rodriguez in docket number 53, no claims remain pending against Dr. Rodriguez.

Dr. Gordon's motion for judgment on the pleadings (docket no. 67) is GRANTED IN PART and DISMISSED AS MOOT IN PART. All federal constitutional claims under § 1983 and *Bivens* are DISMISSED WITH PREJUDICE. The remaining state-law medical malpractice claims are DISMISSED WITHOUT PREJUDICE.

The motion to dismiss filed by Defendant GEO and Blake (docket no. 70) is GRANTED IN PART and DISMISSED AS MOOT IN PART. All federal constitutional claims against GEO and Blake pursuant to § 1983 and *Bivens* are DISMISSED. The ADA claim is DISMISSED. Summary judgment is granted as to GEO on the claim under § 504 of the Rehabilitation Act. All remaining state-law claims against GEO and Blake are DISMISSED WITHOUT PREJUDICE.

SIGNED this 31st day of March, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE